**Myrtle Rawson, Appellee, v. John Hancock Mutual Life Insurance Company, Appellant.**

**Gen. No. 9,129.**

Opinion filed January 18, 1937. Rehearing denied February 20, 1937.

MILLER, ELLIOTT & WESTERVELT, of Peoria, for appellant.

GEORGE Z. BARNES, of Peoria, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

Myrtle Rawson, who will hereinafter be designated as plaintiff, brought a suit in assumpsit against the defendant, John Hancock Mutual Life Insurance Company, who will hereinafter be designated as defendant, to recover on an insurance policy issued by the defendant to plaintiff's husband, July 18, 1927. The amended declaration was filed January 30, 1935, consisting of three counts. In the first count the plaintiff alleged that the defendant on July 18, 1927, issued its life insurance policy on the life of William H. Rawson, for the sum of $1,000; that insured died June 6, 1933; that immediate notice of death was given according to conditions of policy and due proof furnished; that the insured kept and performed the terms and conditions of the policy, etc.

Count two alleges the issuance of the policy; that the insured kept, performed and complied with all the terms of the policy up to and including the quarterly premium due April 18, 1933; that the premium was allowed to go unpaid and thereafter the nonforfeiture options on said policy came into effect; that the surrender value of said policy on April 18, 1933, was sufficient to carry the policy in force for the full amount as a primary and extended insurance for the period after April 18, 1933; that the insured died within the period of 90 days, to wit, June 30, 1933; that the demand of the plaintiff for the full amount of the policy amounted to and was an election according to the terms of the said policy to exercise Option "C" of said policy; that the insured otherwise had complied with the terms and conditions of said policy.

Count three consisted of the common counts. "The defendant filed a plea of General Issue, except as to $7.65 tendered; also a plea of Tender with payment into court of $7.65 and court costs to date, being $7.00 paid-up insurance, six cents post mortem dividend thereon, and 59 cents accrued interest from June 6, 1933 to February 6, 1935. Defendant also gave notice of special defenses under the plea of general issue, in substance that the insured failed and neglected to pay the premium due April 18, 1933, and that no one paid it for him when it became due or within the period of grace provided in said policy; that the period of grace for the payment of the premium due April 18, 1933, had long since elapsed and passed, prior to the date of the death of the insured on June 6, 1933, and that by reason of the failure, neglect and refusal of the insured, or anyone to pay said premium due April 18, 1933, for him within the period of grace provided in said policy, the policy lapsed and became null and void and of no effect prior to the date of the death of the insured.

"Also special notice of defense is, that the insured on June 10, 1932, borrowed from the defendant the sum of $95.00; that on October 18, 1932, the premium then due in the sum of $10.74 was automatically, under the terms of said policy, paid and charged as a loan against said policy; that on January 18, 1933, the quarterly premium then due on said policy in the sum of $10.74 was automatically paid and charged as a loan against said policy, making the total loan against said policy $116.48; that the interest upon said loan, figured to June 6, 1933, the date of the death of the insured, amounted to the sum of $5.71, making the total indebtedness against said policy $122.19; that the cash surrender value of said policy on April 18, 1933, the last date to which premium on said policy was paid, amounted to $126.25, leaving a balance of only $4.06 after the payment of the indebtedness against said

policy; that said sum of $4.06 was insufficient to pay the quarterly premium due April 18, 1933, and that the insured did not, nor did anyone for him, or on his behalf, cause the premium due April 18, 1933 to be paid, and that under the terms and provisions of said policy, the $4.06 remaining of the cash surrender value was applied by the defendant to the purchase of paid-up insurance on the life of William H. Rawson, which said sum was sufficient to buy a paid-up policy for the sum of $7.00 which together with post mortem dividends and interest, was tendered to the plaintiff.''

The case was submitted to the court without a jury and after hearing the evidence and arguments of counsel, the trial court found the issues in favor of the plaintiff and against the defendant and rendered judgment on his findings in the sum of $877.81, as the amount due under the policy. From this judgment the defendant appeals to this court.

It appears from the stipulation, evidence and exhibits, that there was very little, if any, dispute about the facts in the case. It was stipulated by the parties to the suit that William H. Rawson, the insured, applied for the policy, which was issued to him on July 18, 1927. The policy provides for the payment of the annual premiums of $41.69. The first was to be paid on delivery of the policy and a payment of yearly premium on or before the 18th of July, of each succeeding year, until the death of the insured. The insured elected to pay the premiums quarterly in the sum of $10.74, but it appears from the policy that it was issued on the basis of an annual premium of $41.69, and that the anniversary of the issuance of the policy was the 18th of July of each succeeding year. There is no dispute relative to the issuance of the policy, the time of the death of the insured, nor the failure of the insured or anyone for him to pay the premium that was due on April 18, 1933.

The policy provides that in case the insured does not make his payments of the premium when due, he has certain options which he can invoke that are under the heading, "Non-Forfeiture Options," which are as follows: "After two full annual premiums shall have been paid hereon, and if the payment of any subsequent premium or installment shall be in default more than thirty-one days, then:

"Option A.—Without action on the part of the holder, the policy will be continued for its value in participating paid-up life insurance (without disability or double indemnity benefits) which will have a yearly increasing surrender value in no event less than that required by law; or

"Option B.—If the holder so elect, the policy will be terminated and the surrender value paid in cash with the written assent of the person to whom it is made payable; or

"Option C.—Upon written request by the holder filed at the Home Office of the Company within ninety days from the due date of the premium in default, the policy will be continued at its face amount including any outstanding additions and less any indebtedness to the Company hereon or secured hereby, for its value in participating extended term insurance (without loan privilege or disability or double indemnity benefits) dating from said due date. Such insurance will have a decreasing surrender value expiring with the extension term."

It is the contention of the defendant that the insured, "Having failed to pay the premium due April 18, 1933, within the time provided by the policy sued on, and having failed to exercise Option 'B' or 'C' prior to his death, then the Insurance Company, under the terms of said policy, was authorized to, and did, exercise Option 'A' by purchasing paid-up insurance in the amount of $7.00, which amount was tendered to the beneficiary to-

gether with interest thereon, and costs, and thereafter paid into court for the benefit of the plaintiff.'' ''That plaintiff could not under the terms of said policy exercise Option 'C' subsequent to the death of the insured, and the filing of the claim for the face of the policy did not amount to an exercise of Option 'C'.''

The plaintiff's case is clearly set forth in her petition and it is not necessary to restate it here.

Both plaintiff and defendant have filed numerous cases to sustain their contention. The defendant has cited the case of *McDonald v. Columbian Nat. Life Ins. Co.*, 253 Pa. 239, 97 Atl. 1086, as sustaining the contention that the right to exercise the Option B or C in the policy is personal to the insured and no one can exercise either of these options after the death of the insured. The court, after discussing the options that were available to the insured in case of failure to pay the premiums when due, continues as follows: ''The policy by its terms lapsed after 30 days' default in payment of premium, and, under the Massachusetts Statute, automatically became a paid-up life policy for $760.00. This was by operation of law, and not from affirmative action of either party. The insured sought in vain to have it reinstated, but never requested that its cash value be used to purchase extended insurance. By the policy such options are given to the insured, and, in our opinion must be exercised by him, especially that with reference to the purchase of extended insurance on his life. It is no more possible to procure valid life insurance on a dead man than valid fire insurance on a burned building. And, as in this case such extended insurance was neither sought for nor obtained during the life of the insured, it cannot be secured later. The option was personal to him, and cannot be exercised after the rights and liabilities of the parties have been fixed by his death. Unless the insured elects to take extended insurance the right thereto is lost.''

In her brief the appellee suggests that the Supreme Court of Pennsylvania did not adhere to this rule in the case of *Jeske v. Metropolitan Life Ins. Co.*, 113 Pa. Super. Ct. 118, 172 Atl. 172. An examination of that case discloses that it was decided on an entirely different state of facts from the *McDonald* case, and also materially different from the case we are considering. We are aware that there are other courts which have not adhered to this rule, but it is our conclusion the options contained in the present policy were personal to the insured and could not be exercised by anyone after his death.

As to whether the defendant was authorized under the terms of the policy to exercise Option "A" by purchasing paid-up insurance for the plaintiff, the opinions of our sister States are not in accord. Our attention has not been called to any case where our Supreme or Appellate Court has passed upon this question. In the case of *Michigan Mut. Life Ins. Co. v. Mayfield*, 121 Ky. 839, 90 S. W. 607, a suit was brought on an insurance policy upon which the premium had been paid up to July 1, 1905. Insured died July 17, 1905, but failed to pay the premiums due July 1, 1905. The policy provided: "Paid-up Insurance.—If the payments are not made as provided herein, then in every such case the company shall not be liable for the payment of the insured sum, and this policy shall cease and determine, except, only, that after premiums shall have been paid for three or more full years, if default be made in the payment of any premium thereafter, and there be no indebtedness on account of this policy, it will be valid as a paid-up nonparticipating policy for a fractional part of the sum insured as shown in the table of paid-up insurance below. . . .

"Extended Insurance.—After the payment of three annual premiums, if default be made in the payment of any premium thereafter, the insured may, by giving written notice to the company within thirty days after

such default, elect, in lieu of the paid up insurance provided for in this policy, to have the full amount insured carried as nonparticipating term insurance without further payment of premiums, for the time specified in the table of extended insurance below, provided there is no indebtedness to the company on account of this policy. This nonparticipating term insurance shall be subject to the condition of this policy, except as to the payment of premiums, and if death should occur within three years after the nonpayment of premiums, and during the continuance of the nonparticipating term insurance, there shall be deducted from the amount payable the sum of all premiums with interest, that would have become due on this policy if it had been continued in force as originally intended."

In holding that the plaintiff beneficiary could recover only the paid-up insurance, the court said, "The theory upon which the appellee sought to recover upon this policy is that it was in full force at the time of the intestate's death, it being claimed that he had 30 days after he failed to pay the premium in which to elect whether he would take 'paid-up insurance' or take 'extended insurance.' The appellant questions the correctness of this position, and claims that by the terms of the policy the paid-up insurance feature was automatic, and that upon failure to pay the premium the insured was entitled to paid-up insurance. It is conceded by appellant that after the paid-up insurance took effect the insured had the privilege of substituting extended insurance therefor by giving notice within 30 days after the default in the payment of the premium that he desired to exercise his privilege. The solution of the question depends upon the terms of the policy. The parties were capable of contracting. It is the business of the court to ascertain and enforce the contract. It is expressly provided in clause 6, that the company is not liable for the payment of the insured

sum; that the policy shall cease and determine after the premiums have been paid for three years, if default be made in the payment of any premium thereafter. It is then provided that the policy is valid as a non-participating policy for a fractional part of the sum insured, this sum to be paid on the death of the insured. This provision is automatic in character. When the insured failed to pay the premium, the liability of the company was for that fractional part of the sum insured, as shown by the table of paid-up insurance printed on the policy. It is not necessary that the insured should do anything as a prerequisite to the right to paid-up insurance. By the eighth clause of the policy the insured has the right to give written notice to the company within 30 days after the default in the payment of the premium, and in lieu of the paid-up insurance provided for in the policy to have the full amount insured carried as nonparticipating term insurance, without further payment of premiums for the time specified in the table relating to extended insurance. The right under this clause of the policy is optional with the insured. He can substitute extended insurance in lieu of paid-up insurance, if he desires. However, after the default in the payment of the premium, until he exercises this option, his rights are determined by the clause of the policy which provides for paid-up insurance.

"It is insisted, however, as the insured has 30 days in which to apply for extended insurance, that the policy for the full amount remains in force until the expiration of 30 days. This contention is in the face of the plain terms of the policy. To take this view of it, we would have to hold that the policy remains in force for 30 days after default in the payment of premiums, although it is expressly provided that the company is not liable for the payment of the insured sum after default in the payment of the premiums, but only

for a paid-up policy for a fractional part of the sum insured. The policy for the full amount did not remain in force after default in the payment of the premium. If we so held, we would say that the clauses intended to fix the rights of the parties upon the default of the payment of the premium did not become operative until 30 days thereafter, and that the appellant carried the risk for 30 days without compensation. Either the clause providing for paid-up insurance or the one for extended insurance became operative and in force upon the default of the payment of the premium, as both of the clauses could not be in force at the same time. As the paid-up insurance clause automatically went into force upon the default in the payment of the premium, the insured could not substitute the extended insurance in lieu thereof without making the election to which reference has been made. As the insured did not make the election, his personal representative cannot do so.''

We have quoted at length from this opinion because the facts are practically the same as the case now before us, and the law as stated by that court is applicable. It is our conclusion that under the terms of the policy in question, the defendant insurance company had the right to, and did, exercise Option ''A'' of the policy of insurance.

The plaintiff seriously insists that the defendant was indebted to the insured more than $10.74, which was the quarterly premium on the policy, and therefore, the company should have used that to pay the premium for another quarter and kept the policy in full force and effect. They arrive at this conclusion, that by the admission of the defendant, the cash surrender value of the policy was $4.06, and they further contend that there was an apportionate part of a dividend amounting to $8.19 which was due insured, and the two sums equalled $12.25, or more than enough to pay the premium due April 18, 1933. The plaintiff introduced in evidence the resolution of the board of directors of the

defendant company, which was passed on November 14, 1932. It provided for a dividend for policies, "which shall be in force on their respective anniversaries in 1933." The anniversary of the policy in question is the date that it was issued; namely, July 18. This policy was not in full force on that date and was not entitled to participate in any dividends. Therefore, it was not entitled to have this amount applied on the payment of the past due premium.

The trial court erred in finding that the defendant was liable for the face value of the policy and entering judgment for $877.81, but should have found that the plea of tender of the defendant was valid and all to which the plaintiff was entitled was the $7 paid-up insurance with costs, etc.

The judgment of the circuit court of Peoria county is hereby reversed and cause remanded.

*Judgment reversed and remanded.*