Sarah E. Coons, Appellee, v. Home Life Insurance Company of New York, Appellant.

Gen. No. 39,266.

Heard in the third division of this court for the first district at the December term, 1936. Opinion filed June 30, 1937. Rehearing denied July 12, 1937.

WINSTON, STRAWN & SHAW, of Chicago, for appellant; BENJAMIN R. C. LOW, GEORGE T. EVANS, GEORGE B. CHRISTENSEN and GERARD E. GRASHORN, all of Chicago, of counsel.

NICHOLAS J. MASCHA, of Chicago, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the defendant from a judgment of $3,614 entered in the municipal court of Chicago in favor of the plaintiff, the beneficiary named in the life insurance policy issued by the defendant. A trial was had before the court, without a jury.

The facts are substantially that the policy was issued on March 27, 1914, in the face amount of $5,000. Pre-

miums were payable quarterly in the amount of \$43.15, on the 25th day of June, September, December and March. The policy provided:

(a) All premiums were payable in advance and the payment of a premium or instalment thereof did not continue the policy in force beyond the date when the next premium or instalment was due.

(b) A grace of one month for the payment of each premium after the first; if death occurred within the grace period the unpaid premium was to be deducted from the amount payable.

(c) ''This policy shall participate in the surplus of the Company and the proportion of the divisible surplus accruing hereon shall be ascertained and distributed annually by the Company.''

(d) At the option of the insured ''such dividends on the 25th day of March of each year'' might be: (1) Paid in cash; (2) Applied toward Premium; (3) Applied to purchase paid-up additions; (4) Left to accumulate at interest.

(e) ''After this policy shall have been in force three full years, the owner, within three months after any default in payment of premium, but not later, may elect (a) to surrender the policy of its Cash Value; or, (b) to have the insurance continued in force as term insurance from the date of such default . . . for an amount equal to the face amount of this policy . . . less any indebtedness; or (c) to purchase participating paid-up life insurance. . . .''

(f) Automatic extended insurance. ''On default in the payment of any premium hereon the insurance shall be continued . . . as paid-up non-participating Term Insurance as provided in option (b) aforesaid if the insured shall not within three months after such default surrender this policy . . . for its Cash Value, or paid-up insurance.''

(g) ''In lieu of automatic extended insurance the Company will, on receipt of a satisfactory request from

the owner . . . advance the amount of any unpaid premium as a lien on the policy with interest in advance at the rate of six per cent, . . . if, after deducting from the cash value all existing indebtedness and interest, . . . the balance shall equal or exceed the overdue premium with interest. Subsequent premiums will in like manner be advanced from time to time . . . until the Cash Value . . . is not sufficient to cover the accumulated indebtedness and advance the premium. If the Cash Value . . . be . . . insufficient to pay an entire quarterly premium any excess of the Cash Value hereon over the indebtedness shall be used to purchase extended term insurance as aforesaid.''

Until September 28, 1923, insured paid his premiums regularly and had no loans. On that day he obtained a loan of $838 on the policy. This loan was never repaid. Although assured made some payments on account and paid some premiums in cash, most of the premiums from that time on were advanced by the company under the automatic premium lien provision, that is, in substance, were paid out of the equity in the policy.

When the September 25, 1932, premium was due the total amounted to $1,869.27. This premium was paid by a further automatic loan on the policy thereby increasing the total loan to $1,913.71.

When the December 25, 1932, premium became due the cash value of the policy was only $11.36 over the amount of this loan of $1,913.71, which was reduced to $1,885.39 by crediting back unearned interest. This equity of $11.36 was applied by the Company to the purchase of nonparticipating term insurance under the provisions of the policy. The face amount of the policy less the indebtedness at that time was $3,114.61 ($5,000 minus $1,885.39), and with the $11.36, $3,115 worth of nonparticipating term insurance for one month was purchased. This term insurance expired January 25, 1933. The assured died on February 21, 1933.

Defendant made an apportionment based on its earnings for the calendar year 1932, and to meet its dividend requirements for the calendar year 1933. Upon this calculation the sum of $40.75 was "the recorded preliminary calculation of a dividend that would have been allotted and become due and payable on March 25, 1933, if on that date the assured had been alive and the policy been in full force and all premiums due had been paid."

The plaintiff concedes that the facts contained in defendant's statement give a sufficient outline of the matters in controversy with respect to the finding of the court followed by the judgment for the plaintiff on the proposition that the defendant was bound to apply the divisible surplus toward the payment of premiums. However, the plaintiff relied for recovery on four additional theories, which were rejected by the trial court. Since the entire record is before this court, the plaintiff requests that these points be considered and urges that the trial court erred in finding against the plaintiff on the following propositions:

That the defendant was not obliged by the terms of the policy to keep same in full force and effect for three months after the default in premium on December 25, 1932, in the event that there was insufficient equity in the policy to purchase automatic extended insurance for that period of time;

That the defendant was not obliged to notify the insured that the policy sued upon had lapsed;

That the defendant did not waive compliance with any of the terms of the policy sued upon; and

That the terms of the policy sued upon did not require the defendant to commence the computation of extended term insurance commencing from the last day of the days of grace.

Counsel for the defendant argues that the policy provides that the insured was not to share in the divisible surplus of the company except annually, and

by failing to pay premiums insured failed to fulfill essential conditions precedent for the last policy year.

The plaintiff however does not accept this as a proper construction of the provisions of the policy, and replies by saying that every member of a mutual insurance company has an interest in the surplus funds of the company and when the share that an individual member is entitled to has been ascertained it constitutes a credit to the policy and the insurer must apply it toward the payment of premiums to prevent a forfeiture.

On this controverted question of annual dividends, the policy provides:

"This Policy shall participate in the surplus of the Company and the proportion of the divisible surplus accruing hereon shall be ascertained and distributed annually by the Company.

"Dividend Options. At the option of the Insured or the owner of this Policy such dividends on the 25th day of March of each year be either (1) Paid in cash; or (2) Applied toward the payment of any premium or premiums; or, (3) Applied to the purchase of paid-up additions to the Policy; or (4) Left to accumulate to the credit of the Policy with interest at the rate of three per centum per annum and payable at the maturity of the Policy, but withdrawable on any anniversary of the Policy."

The contract further provides that where there is a default in the payment of any premium the insurance shall be continued without action on the part of the insured as paid-up nonparticipating term insurance. The provision is headed "Automatic Extended Insurance" and the language used is as follows:

"On default in the payment of any premium hereon the insurance shall be continued, without action on the part of the insured, as paid-up nonparticipating term insurance as provided in option (b) aforesaid if the insured shall not within three months after such de-

fault surrender this policy to the Company at the Home Office for its Cash Value, or paid-up insurance."

There is evidence in the record which indicates that the defendant, insurer, made an apportionment based on its earnings for the calendar year 1932, and it further appears from the evidence that this was done to meet its dividend requirements for the calendar year 1933; that according to the calculation of the defendant there was a credit to the insured of $40.75 dividend, which appears on the books of the company.

Now then, we find that when the premium of December 25, 1932, was due, there was an equity of $11.36 which had accrued for the benefit of the insured, and this equity was applied by the company toward the purchase of nonparticipating term insurance under the provisions of the policy, and carried the life of the policy to January 25, 1933.

When this dividend or surplus which has been termed accrued was due, the policy was still in force, and the language of the policy used as to automatic extended insurance is that "on default in the payment of any premium hereon the insurance shall be continued," if there is a credit appearing on the books of the company, which, according to the contract of insurance, must be applied toward the purchase of paid-up nonparticipating term insurance. Now, applying this $40.75 toward the purchase of term insurance, this credit was a part of the insurance policy, the subject of this litigation, using the word "credit" in its usual meaning—a sum credited on the books of a company to a person who appears to be entitled to it.

There has been an effort by counsel for the defendant to distinguish between what is termed dividend and divisible surplus. The construction we shall adopt is that contained in the policy itself when reference is made to an "annual dividend" in this language, "divisible surplus accruing hereon shall be ascertained

and distributed annually." Therefore there is not much difference if we apply the words of the contract. When we speak of a dividend we mean a surplus and when we refer to a surplus we mean a dividend, and there is not enough difference to disturb the construction we have followed.

Counsel for both litigants have cited cases upon the questions involved, but our conclusion is that at the time of the death of the insured, and when the policy was still in force, there was a credit of $40.75 which could have been applied as provided for under the terms of the policy issued to the insured, since, as we have heretofore stated, the policy provides that when there is a default, the amount of the dividend or the amount of a divisible surplus accruing shall be used to purchase further nonparticipating term insurance provided for in the contract. Therefore, the insurance policy had not expired because of a default in payment of premium; on the contrary, there was a credit which should have been applied to pay for nonparticipating term insurance.

The defendant cites the case of *Rawson v. Hancock Mut. Life Ins. Co.*, 288 Ill. App. 599, and calls this court's attention to the following language:

"The plaintiff seriously insists that the defendant was indebted to the insured more than $10.74, which was the quarterly premium on the policy, and therefore, the company should have used that to pay the premium for another quarter and kept the policy in full force and effect. They arrive at this conclusion, that by the admission of the defendant, the cash surrender value of the policy was $4.06, and they further contend that there was an apportionate part of a dividend amounting to $8.19 which was due insured, and the two sums equalled $12.25, or more than enough to pay the premium due April 18, 1933. The plaintiff introduced in evidence the resolution of the board of

directors of the defendant company, which was passed on November 14, 1932. It provided for a dividend for policies, 'which shall be in force on their respective anniversaries in 1933.' The anniversary of the policy in question is the date that it was issued; namely, July 18." Then follows this pertinent language of the court: "This policy was not in full force on that date and was not entitled to participate in any dividends. Therefore, it was not entitled to have this amount applied on the payment of the past due premium."

It is evident from the opinion of the court that at the time in question, under the terms of the policy the $4.06 remaining of the cash surrender value was applied by the defendant to the purchase of paid-up insurance on the life of William H. Rawson, which sum was sufficient to buy a paid-up policy for the sum of $7, which together with post mortem dividends and interest, was tendered to the plaintiff. Such was not the fact in the instant case. The insurance policy was in force, and accordingly the plaintiff as the beneficiary was entitled to have the amount in question applied as suggested, which is in accord with the insurance contract.

There is another feature of the insurance contract and that is, the contract provides that "on default in the payment of any premium" the insurance shall be continued as paid-up nonparticipating term insurance. Then the contract makes paragraph (b) on Loan and Surrender values controlling, wherein it is provided: "(b) to have the insurance continued in force as term insurance from the date of such default, without future participation and without the right to loan or cash values, for an amount equal to the face amount of this policy and any outstanding dividend additions, less any indebtedness to the company hereon."

It is to be noted that this provision continues the insurance as term insurance, and in the instant case

the policy was continued by applying $11.36 as premium for the extended period of one month to January 25, 1933, which contract for this class of insurance could be continued by the payment of a premium. Being so, when the time expired the insured was entitled to a grace period of 30 days. The insured died within the period, and when death occurs within the period of grace the premium shall be deducted from the amount payable thereunder.

The parties to this insurance contract agreed upon its terms and to the payment of the sums provided for in the contract.

The law abhors a forfeiture. This applies to the defendant insurance company. While the company admits that there is $40.75 due, still by its theory this sum cannot be applied to continue the insurance. In other words the contract is forfeited and the insurance company retains the amount.

The judgment entered in the trial court was proper and is accordingly affirmed.

*Judgment affirmed.*

Denis E. Sullivan, P. J., and Hall, J., concur.