## LIPMAN v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

### No. 3210.

Circuit Court of Appeals, Fourth Circuit.

April 12, 1932.

Edward H. Burke, of Baltimore, Md. (Leonard Liepman and Bowie & Burke, all of Baltimore, Md., on the brief), for appellant.

S. Ralph Warnken and Vernon Cook, both of Baltimore, Md. (Cook & Markell, of Baltimore, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in an action at law instituted in the court below for recovery on a policy of life insurance issued by the defendant insurance company on the life of plaintiff's wife. The company defended on the ground that insured had exercised an option granted in the policy to surrender it and accept its cash surrender value, and that the company was not liable for any greater amount than this. The case was tried by the court without a jury; and, from a verdict and judgment for defendant, plaintiff has appealed. The only question presented by the appeal is as to the correctness of the holding of the court below that there was no evidence in the case upon which plaintiff was entitled to recover.

The facts may be briefly stated. Plaintiff's wife held a policy of life insurance, which she had been carrying for a number of years, and upon which more than three annual premiums had been paid. This policy provided for the payment of premiums on October 5th of each year, which was designated as the "register date" of the policy. On September 24, 1929, insured wrote the com-

pany that she desired to cancel the policy and asked that she be sent check for the cash reserve and dividend. This letter was referred to a local solicitor, who informed insured that, if she desired to surrender the policy and obtain its cash surrender value, she should send it in to the company. On October 8th an employee in the company's local office wrote insured that the solicitor had advised that she would return the policy for cancellation, and that before the local office would be in position to place the matter before the home office it would be necessary that the policy be returned. On October 10th insured returned this letter to the company's local office with the following notation thereon: "Policy enclosed as per above request. Kindly send me check for cash surrender value, together with dividend due me." The policy was inclosed with the letter.

On October 11, the local office forwarded the policy to the home office, together with a letter showing that premiums had been paid thereon to October 5, 1929, and that insured desired the cash value. The policy and letter were not received at the home office until October 14th, however, as October 12th was a legal holiday and October 13th was Sunday; and on the very day that they were received, and within a short time afterward, insured was killed in an automobile accident. The company was notified of her death, and a few days later duly tendered check for the cash surrender value of the policy with current dividend, which was refused.

Plaintiff's contention is that there was no right on the part of the insured to surrender the policy and receive the cash surrender value thereof until there should be a default in the payment of premium; that there could be no default until the days of grace allowed for the payment of premiums had expired; that these had not expired when insured returned the policy and requested that the cash surrender value be paid to her; that her letter, for that reason, constituted, not the acceptance of an option, but the making of an offer to the company; and that, because her death occurred before her offer was accepted by the company, no contract to accept the cash surrender value resulted. The company, on the other hand, contends that the letter of insured and the return of the policy constituted the acceptance of an option contained in the policy; that there was a default within the meaning of the policy authorizing insured to exercise the option when the premium was not paid on the date when it became due; and that,

as creating a default was a matter within the control of insured, she had the right to exercise the option in advance of the default.

In view of these contentions, it becomes important to examine carefully the exact provisions of the policy. On the second page thereof appears a table showing in one column the loan and cash values of the policy for each policy year, and, in another, the paid-up insurance values. Above the loan and cash value column, it is stated: "The loan value is the cash value less interest to the premium anniversary date." Opposite this table is the provision relating to loans and surrender values, the pertinent provisions of which are as follows:

"Provisions Relating to Loans and Surrender Values.

"Loans. At any time, while this policy is in full force, after three full years' premiums have been paid, the Society will advance to the insured (or assignee if any), on proper assignment and delivery of this policy, and on the sole security hereof a sum which, with interest, shall not exceed the cash value at the end of the then current policy year (as stated in the opposite table), less any indebtedness to the Society hereon, *provided all premiums or instalments of the same have been fully paid to the end of the then current policy year.* * * *

"Options on Surrender or Lapse. After three full years' premiums have been paid hereon, upon any subsequent default in the payment of any premium or instalment thereof, and within three months after such default, this policy may be surrendered by the insured (or assignee if any) who may elect either of the following options:

"(a) To receive the cash surrender value of this policy; or

"(b) To purchase non-participating paid-up life insurance payable at the same time and on the same conditions as this policy, but without total and permanent disability benefits.

"In the event of default in the payment of any premium or instalment thereof after this policy has been in force three full years, if the insured (or assignee if any) does not select either of said options within three months of such default, the policy shall become automatically paid-up under option (b). * * *

"Basis of Computation. The reserve for which funds are to be held upon this policy shall be computed upon the American ex-

perience table of mortality with interest at 3½% by the net level premium method.

"The values stated in the opposite table are mathematical equivalents and each is equal to the full reserve at the end of the then current policy year, on the basis stated in the preceding paragraph, less a surrender charge of not more than 2½% of the face of this policy, except that fractions of a dollar are not allowed. There is no surrender charge under option 'A' after the twenty-fifth policy year.

"Payment of Surrender Value. The granting of any surrender value under this policy may be deferred by the Society for a period not exceeding ninety days after receipt of application therefor." (Italics ours.)

On the third page of the policy, under the heading "Privileges and Conditions," appear the following provisions relative to payment of premiums and grace:

"Payment of Premiums. All premiums are payable in advance at the home office, or to any agent or cashier of the Society, upon delivery on or before their due date, of a receipt signed by the president, a vice-president, secretary or treasurer, and counter-signed by said agent or cashier. ° ° °

"Grace. A grace of thirty-one days, subject to an interest charge at the rate of 5% per annum, will be granted for the payment of every premium after the first, during which period the insurance hereunder shall continue in force. If death occur within the days of grace, the premium for the then current policy year or any unpaid instalments thereof shall be deducted from the amount payable hereunder.

"Except as herein expressly provided, the payment of any premium or instalment thereof shall not maintain this policy in force beyond the date when the succeeding premium or instalment thereof becomes payable."

After a careful examination of these provisions, we think that the company is correct in its contention that, when insured returned the policy and demanded the cash surrender value thereof on October 10th, she was exercising an option given her under the policy. It is perfectly clear that the policy contemplates that the cash reserve shall be at all times available to the policyholder, subject to the right of the company to postpone payment thereof for a ninety-day period. Thus during a year for which premiums have been paid in advance, the cash reserve may be borrowed as a loan on the

sole security of the policy, and is to be determined by subtracting from the cash surrender value available at the end of the year interest computed for the intervening time, i. e., "to the premium anniversary date." After the expiration of the year for which premiums have been paid, the cash reserve may be withdrawn as the surrender value of the policy. The insured is thus given the option when a premium falls due of either paying it and continuing the insurance, or surrendering the policy and taking its cash value.

There would be no question as to this being the correct interpretation of the applicable provisions of the policy but for the provision that allows a grace of thirty-one days in the payment of premiums; and the argument is made that until the lapse of the thirty-one days there is no default, and consequently no option to demand the cash surrender value. We think, however, that the clear meaning of default as here used is failure to pay the premium on the date due; i. e., the anniversary date of the policy. It is to the anniversary date that the premiums have been paid; it is this date which serves as a basis for determining other rights under the policy; and there could be no reason for requiring an insured, who desires to surrender a policy at the expiration of the period for which he has paid premiums, to wait until the expiration of the grace period to claim the cash reserve to which he is entitled. Nor is there any reason in requiring the company to carry the insurance without compensation during the grace period for an insured who desires to surrender the policy and obtain its value. The insurance is carried during the grace period without additional compensation, where the insured does not continue the insurance and does not die during the period.

This interpretation is borne out by the language used in the caption of the option paragraph, "Options on surrender or lapse." Under the interpretation contended for by plaintiff, the options provided would become available only on lapse; for the policy lapses upon default in the payment of premiums at the end of the grace period. The language used shows that it was contemplated that the options would be available before a lapse had occurred, that is, before the days of grace had expired.

The term "days of grace" is manifestly not used in the policy in any technical sense. Days of grace in the law merchant were the three days allowed the drawee or

maker within which to pay a negotiable instrument. They were an indulgence allowed in the performance of an obligation. There is no obligation on the part of an insured to pay a premium, however; and, for failure to pay same, he cannot be said to be in default in any technical sense. The so-called days of grace are a mere provision in the contract of insurance that the insured may defer the payment of a premium for thirty-one days after it becomes due by paying interest over the period, and that the insurance will be continued in the meantime. It does no violence to the language used in the policy, therefore, to construe default in the payment of a premium as meaning failure to pay it when it becomes due under the terms of the policy.

It will be noted that insured is entitled to a loan on the policy only on condition that all premiums have been paid to the end of the then current policy year. This means that, after the anniversary date of the policy, insured cannot secure a loan on it without paying the premium, i. e., paying for insurance for the current year. If he cannot elect to take the cash surrender value during the grace period, this means that, if he decides to drop the policy and take its cash surrender value, there is a period of thirty-one days during which the cash reserve is not available to him. Surely nothing of this sort was contemplated; and it is unreasonable, we think, to place upon the provision of the policy a construction which would lead to this absurd result.

A case directly in point on the proposition involved is the recent decision of the Circuit Court of Appeals of the Fifth Circuit in Joyner v. Jefferson Standard Life Insurance Co., 53 F. (2d) 745. The policy under consideration in that case provided a grace of thirty-one days in the payment of premiums subject, as here, to an interest charge. It also provided certain nonforfeiture provisions, to be elected by the insured "within sixty days from the date of the non-payment of any premium after the third." One of the questions in the case was whether this sixty-day period had elapsed from the non-payment of a premium. If the period was counted from the day specified in the policy for the payment of the premium, the period had elapsed; if counted from the end of the grace period, it had not. The court held that it had elapsed, saying:

"The period of election above referred to expired sixty days after June 5, 1929, the date upon which the premium was due. That

time was not extended by the grace period. It is true, of course, that, if the premium and interest thereon had been paid during the grace period the policy would have been kept in force, but, upon failure to make such payment within that period, the policy became forfeited as of the date the premium was due; for the payment of any installment did not continue the policy in force beyond the due date of the next installment, and the nonforfeiture provisions begin to run 'from the date of non-payment of any premium.' There was thus fixed a definite date of payment. That the end of the grace period was not intended to be the date of nonpayment is clearly indicated by the provision requiring interest to be paid on a premium during that period."

An interesting question arises as to whether the election of insured to take the cash surrender value, made during the grace period, would not be binding even though the default be construed as occurring at the end of the days of grace, as it was within the power of insured to cause a default. Lovell v. St. Louis Mutual Life Ins. Co., 111 U. S. 264, 4 S. Ct. 390, 28 L. Ed. 423. The argument that insured could not force payment earlier than provided by the policy is beside the point. The question is one of exercising an option; and, if insured decided to exercise same and to waive any rights under the grace provision, there would appear to be no reason why the election should not be held binding, even though the amount payable thereunder should be held not to be payable until the end of the grace period or ninety days thereafter. But we need not decide this, as we are satisfied that the option granted under the policy became available to the insured upon her failure to pay the premium on the date specified in the policy for the payment of same.

Since the insured had the option to surrender her policy and take the cash surrender value on October 10th, there can be no question but that the rights of the parties became fixed and insured became entitled to the cash surrender value, and nothing more, when she exercised the option. It was not necessary that defendant do anything. There was a meeting of the minds of the parties when insured accepted the continuing offer of the company evidenced by the option. Pequot Mfg. Corporation v. Equitable Life Assurance Society, 253 N. Y. 116, 170 N. E. 514; McCormick v. Travelers' Ins. Co., 215 Mo. App. 258, 264 S. W. 916; Ingram

Johnson v. Century Ins. Co., 1909 Ct. of Session Cases, Fifth Series, Scotland, p. 1032.

The case has presented some difficulty because of the sympathy which everyone feels for one who suffers from what has turned out to be a bad bargain. Hard cases are the quicksands of the law. There will be less difficulty in seeing the correctness of our conclusion if the principles of the decision be applied to a different situation. If the insured, after writing the letter of October 10th, had continued to live and had done nothing further towards exercising the option contained in the policy, we think that no one would question but that it had been properly exercised and that insured became entitled to the cash surrender value without further action either by herself or the company. If in such case the company after the lapse of three months had proceeded to declare the policy paid up under option (b), and had denied her right to the cash surrender value on the ground that what was done on October 10th was not a valid exercise of an option contained in the policy, we do not think that any court would consider for a moment sustaining such contention. It is needless to say that, whether the option existed, and whether the acts of insured amounted to an acceptance thereof, depended not at all upon whether she continued to live or whether in the light of subsequent events the election voluntarily made was of advantage to the beneficiary under the policy.

There was no error, and the judgment below will be affirmed.

Affirmed.