## Jeske, Admx., Appellant, v. Metropolitan Life Insurance Co.

Argued March 7, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

120

*T. A. Donahoe* of *Donahoe & Helriegel,* for appellant.

*Edward W. Warren* of *O'Malley, Hill Harris & Harris,* for appellee.

OPINION BY KELLER, J., April 23, 1934:

Julius Jeske on March 15, 1920, when forty years old, took out a policy of endowment life insurance in the defendant company in the *face amount* of $3,350, payable, as endowment insurance, when he attained eighty-five years of age, and, as a death claim, to his estate, if he died before reaching that age; with special provisions for increased insurance, (1) if he died before he became sixty years old, ($5,025 instead of $3,350), and (2) if he died by accidental means before he became sixty years old ($6,700 instead of $3,350). He was to pay a premium of $69.25 semi-annually, thereafter, on September 15 and March 15, of every year until 1940, if he so long lived, and $49.45 semi-annually, thereafter, until the policy matured either as an endowment or death claim. The policy contained provisions for loans which the insured was entitled to obtain on its security; for surrendering the policy for cash after the third year; for surrendering it for paid-up non-participating endowment insurance in a reduced amount; and for surrendering it for term life insurance for the face amount, $3,350, for certain fixed terms; and contained a table (referred to in the Surrender or Lapse Options printed in the Reporter's statement) of loan and cash surrender values per $1,000 insurance, paid-up endowment insurance per $1,000 of insurance, and extended term insurance for the face value of the policy, of which the following years only are material.

| End of Year | Cash Value or Loan Value | Paid up Endowment Insurance | Term Insurance Continued for |
|---|---|---|---|
| 11 | $181 | $346 | 12 yrs. 0 months |
| 12 | 201 | 376 | 12 yrs. 6 months |

The company subsequently voluntarily increased these loan, cash surrender and paid-up endowment insurance values.

The insured paid the premiums as they fell due up to and including March 15, 1931. He did not pay

the premium payable September 15, 1931. He died November 7, 1931. He had borrowed on the policy on January 18, 1930, $623. The amount due to repay the loan on the day of default was $680.36. The cash surrender value of the policy on the day of default was $720.50, making the cash surrender value of the policy, after deducting the loan, $40.14. The paid-up endowment insurance after deducting the loan was $76.67. The cash surrender value of the policy after deducting the loan, $40.14, would have purchased term life insurance for the face amount of the policy, $3,350, for eight months, or until after the date of the insured's death.

The policy gave the insured, on default in payment of premiums, three options which he might exercise within three months, and, if there were no indebtedness on the policy, receive the privileges set forth in the table of values above set forth, as voluntarily increased by the company, to wit: (1) He could take the cash surrender value, $720.50; or (2) he could take paid-up endowment insurance for $1,365.13 payable as an endowment at eighty-five years of age, or at his sooner death; or (3) he could have the insurance continued as term life insurance for the face amount, $3,350, for twelve years and three months. If there was any indebtedness on the policy, it would have to be deducted, and the privileges correspondingly reduced; that is, in the present case, there being an indebtedness of $680.36, the insured could have within three months elected: (1) To take the cash surrender value of $40.14; or (2) to take paid-up endowment insurance for $76.67, payable as endowment when he was eighty-five years old or at his sooner death; or (3) to have the insurance continued for the face amount, $3,350, as term life insurance for eight months. He made no election and died before the three months option period had expired.

If the insured did not within three months from the due date of premium in default, make his election between these three options and surrender the policy in accordance therewith, the policy provided that "the policy shall be continued for a reduced amount of paid-up insurance as provided in the second option;" that is, in this case if the insured had lived more than three months after September 15, 1931 and had not, in the meantime, exercised his choice of options, the company would automatically have continued the policy as paid-up insurance for $76.67, payable as endowment when he became eighty-five years old, or at his sooner death.

The policy made no provision for what occurred in this instance, viz., the death of the insured before his three months option period had expired and before the company could invoke the automatic provisions which the policy applied at the end of his three months option period. What are the rights of the beneficiary under the policy, his estate—that is, the administratrix of his estate—in this situation, for which the policy makes no specific provision?

The case differs from McDonald v. Columbian National Life Ins. Co., 253 Pa. 239, 97 A. 1086, for in that case, as was pointed out by the present Chief Justice in Carter v. Metropolitan Life Ins. Co., 264 Pa. 505, 107 A. 847, "the State law provided automatically for a paid-up life insurance policy for a certain amount, after thirty days default in non-payment of premium, without action by either of the parties." And while the insured in that case might have within those thirty days used the cash surrender value to purchase extended term insurance for the full face of the policy for four years and two hundred and thirty-eight days, he had not done so, and the provisions of the State law automatically applied. We have not that situation here.

In the Carter case (264 Pa. 505, 107 A. 847—decided in 1919), the insured on August 3, 1910 obtained from the present defendant an endowment policy on his life for $15,000, payable in fifteen years, or at his prior death, for which he was to pay an annual premium of $1,107.30. He borrowed $3,510 on the policy on September 22, 1914, the full cash surrender value at the time, and died on November 27, 1915, without having paid the loan, or the premium due on August 3, preceding. The policy in that case provided that after it had been in force three years, the holder within three months after any default might elect (a) to accept the cash value of the policy, or (b) to have the insurance continued in force as term insurance for its face amount, or (c) to purchase non-participating paid-up endowment insurance payable at the same time and on the same conditions as the policy. If the owner did not within three months from default exercise his option as provided in options (a) and (c), the insurance would be continued as term insurance for its face amount, as provided in option (b). The policy contained no provision indicating an intention in case of default, after granting a loan, to apply the proceeds of the policy to the payment of the indebtedness. It did contain a provision that a failure to repay a loan with interest "shall not avoid this policy unless the total indebtedness hereon to the company shall equal or exceed such loan value at the time of such failure and until thirty-one days after notice shall have been mailed by the company to the last known address of the insured." The loan in the Carter case did equal the loan value at the time of default in payment of premium, but notice had not been sent in conformity with the policy, and following Francis v. Prudential Ins. Co., 243 Pa. 380, 90 A. 205, recovery was allowed for the face amount, $15,000, less the loan indebtedness, $3,510, on the principle that until thirty-

one days after notice was sent announcing the avoidance of the policy it remained in force as term insurance for its face amount. The policy in the present case was issued the year after the Carter case was decided, and the defendant company profited by that decision to declare in the policy that "On surrender or default any indebtedness to the company under this policy will be deducted from the cash value." This requires, as set forth in Toncich v. Home Life Ins. Co., 309 Pa. 336, 163 A. 673, that the indebtedness be first deducted from the reserve or cash value before the insured is entitled to elect which of the three options secured to him he will take, and the cash value, paid-up insurance or term of extended insurance, as the case may be, is proportionately reduced. The policy in that case provided: "Should any indebtedness exist, it shall be deducted from the cash value of the policy and the other values shall be correspondingly reduced." Construing this, Mr. Justice KEPHART, speaking for the Supreme Court, said: "Under the automatic extension clause the insured could demand that the reserve on the policy, built up by the payment of premiums for four years, be applied to extend the full insurance. The period of extension was computed on the basis of reserve or cash value at the time of lapse, excluding any indebtedness. If there was any indebtedness on the policy, the insurer was entitled to liquidate it by charging it against this reserve value: Bach v. Ins. Co., supra [51 Fed. (2d) 191]; Hawthorne v. Bankers Life Co., 52 Fed. (2d) 309. When an indebtedness is charged against the reserve or cash value of a lapsed policy the extended insurance as shown by the table is proportionately reduced." He then gave the following concrete example of the insured's rights thereunder: "The reserve or cash value of this policy on April 28, 1929, was $324; the indebtedness was the $300 loan, leaving $24 to secure

extended insurance. This sum, on the basis of the tables in the policy, would extend the insurance [that is, for the face amount of the policy] for one year and eleven days, at the expiration of which period, insured being still alive, the policy ceased and determined.''

This is exactly what the appellant in this case claims the right to do, the insured having died within the three months period allowed him to choose his option, and the net cash value, over and above the indebtedness, applicable to extended term insurance being sufficient to extend insurance for the face amount of the policy beyond the date of the insured's death. Applying the facts of this case to the language of that opinion, it would read: ''The reserve or cash value of this policy on September 15, 1931 was $720.50; the indebtedness was $680.36, leaving $40.14 to secure extended insurance. This sum on the basis of the tables in the policy, would extend the insurance for eight months or until May 15, 1932.'' The insured died November 7, 1931, within the extended term.

The defendant company, while claiming the right—notwithstanding the insured died before the policy gave the company the authority to do so—to apply the second option and continue the policy for $76.67 paid-up insurance, payable at his death, offered in its affidavit of defense to pay the plaintiff $187.60, which it calculated as the amount of insurance which the cash surrender value, $40.14, would buy *for a term of twelve years and three months*, and which it claimed the right to do under the next to the last paragraph of the 'option provisions' printed in the Reporter's statement, as follows: ''On surrender or default any indebtedness to the company under this policy will be deducted from the cash value; and such indebtedness will also reduce the amount of paid-up insurance or the amount continued as term insurance and any

pure endowment payable at the end of the endowment term, in such proportion as the indebtedness bears to the cash value at due date of premium in default.''

The calculation is in this wise: Under the table of Guaranteed Loan Values and Surrender Values (17-a), after the policy had been in force eleven years and six months, the cash surrender value, on September 15, 1931, $720.50, if there had been no indebtedness on the policy, would have purchased non-participating term insurance for the face amount of the policy, $3,350, for twelve years and three months. The indebtedness, $680.36, is 94 2/5% of the cash surrender value, $720.50, leaving 5 3/5% free of indebtedness; —5 3/5% of $3,350, it calculated to be $187.60, for which amount, it averred, the insured became, *at his death,* entitled to term insurance for *twelve years and three months,* from September 15, 1931, or for a period of more than twelve years after his death. The trial judge, sitting without a jury, adopted this view and entered judgment accordingly.

The clause relied on to effect this result, viz., ''Such indebtedness will also reduce ...... the amount continued as term insurance,'' is repugnant to and inconsistent with the earlier and older provisions of the policy relating to the insured's options on default— which defendant admits are not abrogated—, as well as the immediately preceding sentence, ''On surrender or default any indebtedness to the company under this policy will be deducted from the cash value.'' After deducting the indebtedness from the cash value, the indebtedness is gone—wiped out—and the net balance remaining as cash value is applicable to whichever of the three options the insured, within three months, may elect. He may apply it to the third option which calls for continued insurance for the *face amount* of the policy for a *term reduced* in proportion to the cash value remaining after deducting the indebtedness:

Metropolitan Life Ins. Co. v. Lillard, 118 Okla. 196, 248 P. 841; Toncich v. Home Life Ins. Co., supra; Carter v. Metropolitan Life Ins. Co., supra; Schuberth v. Prudential Ins. Co., 86 Pa. Superior Ct. 80; Great Southern Life Ins. Co. v. Jones, 35 Fed. (2d) 122 (C. C. A. 8th Circuit). Otherwise the policy would unfairly discriminate against a borrowing policy holder; since the policy itself—see Reporter's statement—declares, ''The values of these options are mathematical equivalents.'' The provision relied on differs from the third option in that after the indebtedness has been deducted from the cash value, it further attempts to reduce the *amount* of the extended term insurance rather than the duration of the *term*.

This clause, or one similar to it, has been passed upon in other jurisdictions. In Missouri it has been struck down as contrary to the statute law on the subject. See Gooch v. Metropolitan Life Ins. Co., 61 S. W. (2d) 704, overruling the same case in 49 S. W. (2d) 679, relied on by the court below. In other states it has been held to be invalid as an attempted illegal discrimination against a borrowing policy holder: Metropolitan Life Ins. Co. v. Lillard, 118 Okla. 196, 248 P. 841; Security Life Ins. Co. v. Watkins, 189 Ky. 20, 224 S. W. 462. See also Emig v. Mutual Benefit Life Ins. Co., 127 Ky. 588, 106 S. W. 230; N. Y. Life Ins. Co. v. Scheuer, 198 Ala. 47, 73 So. 409. In Indiana a similar provision was held ambiguous and unenforceable as against the prior option of term insurance for the face amount of the policy: Hay v. Meridian L. & T. Co., 57 Ind. 536, 101 N. E. 651. We need not go as far as these cases. In our opinion its effect, in view of the repugnancy and inconsistency above referred to, is to give the insured who has obtained a loan on the policy, a fourth option, viz., to allow him, in such case, to take extended term insurance for a proportionately reduced amount ·of the face of the

policy ($3,350), for the *full term* fixed by the table of values (twelve years and three months), instead of the third option which entitled the insured to take term insurance for the *full face amount* of the policy for a *proportionately reduced term.*

The policy provides specifically that in case of default any indebtedness to the company under the policy will be deducted. This leaves $40.14, which during full three months (Clappenback v. N. Y. Life Ins. Co., 136 Wis. 626, 118 N. W. 245) the insured had, under the third option, the right to apply to the purchase of extended or term insurance for the face amount of the policy ($3,350) for a proportionately reduced term, to wit, in this case, eight months—just as stated in Toncich v. Home Life Ins. Co., supra—if he saw fit to do so, instead of reducing the amount of extended term insurance to $187.60 for the full term of twelve years and three months, as the later provision of the policy also gave him the right to do.

Where the policy gives the insured the right to elect which of three or four options he might select, in case of default, and fixes a period of three months within which he can make his election, and neither the State law nor the policy makes any provision as to what option should be enforced in case the insured dies before the three months have expired, we are of opinion that the law will apply the option most advantageous to the insured, or his beneficiary, which in this case is the third option, viz., the right to have the insurance continued for its face amount, $3,350, as term insurance in whole number of months from due date of premium in default. The law was, in principle, so applied in Metropolitan Life Ins. Co. v. Lillard, supra; Emig v. Mutual Benefit Life Ins. Co., supra; Bartholomew v. Security Mutual Life Ins. Co., 124 N. Y. Supp. 917, 140 App. Div. 88, affirmed, 204 N. Y. 649, 97 N. E. 869, reargument denied, 205 N. Y. 545, 98

N. E. 1098. See also, Nielsen v. Provident Sav. Life Assurance Soc., 139 Cal. 332, 73 P. 168; Veal v. Security Mut. Life Ins. Co., 6 Ga. App. 721, 65 S. E. 714; Algoe v. Pacific Mut. Life Ins. Co., 91 Wash. 324, 157 P. 993; McEachern v. N. Y. Life Ins. Co., 82 S. E. 820 (Ga.); State Mut. Life Ins. Co. v. Forrest, 91 S. E. 428 (Ga.). The contract of insurance is, if possible, to be so construed as to protect the insured: MacDonald v. Metropolitan Life Ins. Co., 304 Pa. 213, 155 A. 491.

The face amount of the policy is $3,350; not $5,025 nor $6,700. The last two amounts include increased death benefits, which under the terms of the third option are expressly excluded in cases of default.

The assignments of error are sustained. The judgment is reversed and is now entered for the plaintiff for $3,350, with interest from February 7, 1932.