## EQUITABLE LIFE INS. CO. OF IOWA v. GERMANTOWN TRUST CO.

### No. 6280.

Circuit Court of Appeals, Third Circuit.

Feb. 4, 1938.

MARIS, District Judge, dissenting.

———————◆———————

Ward C. Henry and Swartz, Campbell & Henry, all of Philadelphia, Pa, (Phineas M. Henry, of Des Moines, Iowa), for appellant.

Stanley L. Thornton and Guckes, Shrader, Burtt & Thornton, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON and THOMPSON, Circuit Judges, and MARIS, District Judge.

THOMPSON, Circuit Judge.

This is an appeal from a judgment of the District Court for the Eastern District of Pennsylvania. The appellee is the Germantown Trust Company, trustee under an insurance trust agreement of Pratt Thompson. The appellant is the Equitable Life Insurance Company of Iowa. In 1928 the appellant issued a policy insuring the life of Pratt Thompson in the sum of $5,000. Premiums were paid annually until May 6, 1934, when the insured was in default. On June 29, 1934, fifty-three days after default, the insured died. The appellee brought suit to recover the face value of the policy.

The appellant in its affidavit of defense denied that it was liable for the face amount of the policy. It alleged that on June 5, 1934, after the premiums were in default, the insured sent a written request to the appellant's local office for the cash surrender value of the policy and it contended that this amounted to an election under the third option of the nonforfeiture provisions of the policy which are set out in full in the margin.[1] The court below

---

[1] Non-forfeiture Provisions

After the payment of premiums for three full years, the insured may, upon written request, at any time before default in the payment of premium or within sixty days after such default, elect one of the following options:

(I) Reduced Paid-up Insurance

To have the policy continued as paid-up non-participating insurance of a reduced amount payable in one sum at the same time and under the same conditions as this policy. Such paid-up policy may be surrendered for its cash value, which shall be the full reserve at time of surrender less any indebtedness to the Com-

pany on account of such paid-up policy.

(II) Extended Term Insurance

To have the policy continued as non-participating paid-up term insurance for the face amount of the policy and any outstanding paid-up additions thereto less any indebtedness hereon to the Company, counting from the due date of the premium in default but without the right to loans.

(III) Cash Surrender

To surrender the policy and with the consent of any assignee and of any beneficiary whose interest is irrevocable, receive the cash value hereof together with the value of any existing paid-up addi-

held that this defense was not properly pleaded in that the affidavit of defense set out the evidence which the appellant intended to produce and not facts. Thereupon, the appellant, in an amended and substituted affidavit of defense alleged that: "* * * On or about the 5th day of June, 1934, the said insured, Pratt Thompson, executed a written request for the cash surrender value of said policy of life insurance and delivered the same to the office of the general agent for the defendant in Philadelphia, Pennsylvania, notifying the defendant that he desired to elect the option provided for in the non-forfeiture provisions of said policy to surrender the policy and receive the cash value thereof, less any existing indebtedness to the company on account of said policy. That the defendant is unable to set out a copy of said writing because the same has been lost or destroyed, but the said writing contained the request of the insured for the cash surrender value of said policy, as stated above."

The amended and substituted affidavit of defense was likewise deemed inadequate by the court below, which entered judgment for want of a sufficient affidavit of defense.

■ The question is whether a written request, without more, amounts to an election of one of the options in accordance with the requirements of the policy to be construed. Omitting such portion of the nonforfeiture provisions as are irrelevant to this discussion, they read:

"* * * The insured may, upon written request, * * * elect * * * to have the policy continued as paid-up non-participating insurance of a reduced amount payable in one sum at the same time and under the same conditions as this policy. * * *" Option I.

"* * * The insured may, upon written request, * * * elect * * * to have the policy continued as non-participating paid-up term insurance for the face amount of the policy. * * *" Option II.

"* * * The insured may, upon written request, * * * elect * * * to surrender the policy and with the consent of any assignee and of any beneficiary whose interest is irrevocable, receive the cash value. * * *" Option III.

It will be noted that, whereas in the first two options the only requirement for the exercise of any election is that the insured send a written request, the third option includes, inter alia, the requirement that the insured surrender the policy. The affidavit of defense does not aver the surrender of the policy.

Lipman v. Equitable Life Assur. Soc. of the United States, 4 Cir., 58 F.2d 15 and Pacific States Life Ins. Co. v. Bryce, 10 Cir., 67 F. 2d 710, 91 A.L.R. 1446, relied upon by the appellant, are clearly distinguishable because the insured in those cases did, in fact, surrender the policy and do all that was necessary to elect the cash surrender value. In the instant case, under the averments of the pleadings, he did not complete his election because he never surrendered his policy. In our opinion the District Court correctly ruled that the pleadings did not set forth an election.

■ As an alternative defense the appellant pleaded that if no election was made by the insured within sixty days from the date of default the policy was automatically continued as reduced paid-up insurance under option I. The nonforfeiture provisions contained in this policy are substantially the same as those in Jeske, Adm'x v. Metropolitan Life Ins. Co., 113 Pa.Super. 118, 172 A. 172, where the Pennsylvania appellate court applied the rights granted by the term insurance option. The court below, following the reasoning and conclusions in the Jeske Case, supra, held that the insured had sixty days after default within which to make the election; that the automatic continuance under option I did not take effect until after the expiration of the sixty days; that in the absence of an election and of the automatic continuance

tions and less any existing indebtedness to the Company on account of this policy.

In event of default in payment of premium if the insured elects none of the above options, the policy will be continued automatically under Option (I) unless the insured has filed at the Home Office of the Company while no premium is in default written request that the policy be continued under Option (II).

The amount of the paid-up insurance under Option (I) or the term of the extended insurance under Option (II) shall be such as the cash value of this policy and of any existing paid-up additions, less any indebtedness hereon to the Company, will purchase as a net single premium on the basis of the American Experience Table of Mortality with interest at the rate of three and one-half per cent. per annum.

under option I the court will apply the option most favorable to the insured or his beneficiary; and that term insurance for the face value of the policy under option II was the most favorable option in the instant case. We think the District Court properly followed the reasoning and conclusions of the Jeske Case, supra, and that it did not err in entering judgment for the appellee.

The judgment is affirmed.

BUFFINGTON, Circuit Judge (concurring).

I concur in the opinion of the court and desire to add some further considerations.

The premiums in this case were paid annually until May 6, 1934, when the insured was in default, but the insurance continued in force under the 60-day leeway until July 6th.

The option clause embodied two features; namely, "to surrender the policy," and "receive the cash value." It will be noted that the affidavit of defense nowhere avers that any action on the option was taken by the company which was communicated to the insured. The company actually did nothing of which the insured was informed during the fifty-five remaining leeway days and by this inactivity permitted the policy to continue in force until the insured died.

MARIS, District Judge (dissenting).

I regret that I am unable to agree with the conclusion of the majority of the court that the insured, Pratt Thompson, did not complete his election of the cash surrender option contained in his policy. I understand it to be well settled that where a policy of life insurance contains nonforfeiture provisions under which the insured is given an election among several options, each of them constitutes a continuing offer on the part of the insurance company which, when accepted by the insured through the exercise of his option, fixes the rights of the parties without any further action on the part of the company. Pequot Mfg. Corp. v. Equitable Life Assur. Society, 253 N.Y. 116, 170 N.E. 514; Lipman v. Equitable Life Assur. Soc., 4 Cir., 58 F. 2d 15; Pacific States Life Ins. Co. v. Bryce, 10 Cir., 67 F.2d 710, 91 A.L.R. 1446; Northwestern Mut. Life Ins. Co. v. Joseph, 103 S.W. 317, 318, 31 Ky.Law Rep. 714, 12 L.R. A.,N.S., 439. This is for the reason that an election once made estops the elector.

He may not thereafter revoke his choice and select another alternative. The irrevocable acceptance attests the meeting of the minds of the parties and constitutes a contract. Castle Creek Water Co. v. City of Aspen, 8 Cir., 146 F. 8, 8 Ann.Cas. 660.

In the present case the insured made a written request for the cash surrender value of the policy and delivered it to the company, but did not surrender his policy to the company before his death. It will thus be seen that the question for decision in this case is, as stated in the opinion of the court, whether a written request, without more, amounts to an election of one of the options in accordance with the requirements of the policy or whether it is necessary also to surrender the policy to complete the election.

When the policy provisions in question are examined it is seen that the first paragraph confers the right of election. The language is " * * * the insured may, upon written request, * * * elect one of the following options." By this language the manner of signifying the election is clearly pointed out. It is to be "upon written request." The three paragraphs of the nonforfeiture provisions which immediately follow are descriptions of the options to be elected. Each one of them describes a separate option. The third relates to the cash surrender option which is described as an option to the insured "to surrender the policy and * * * receive the cash value hereof. * * *" It is clear that the surrender of the policy is definitely made a part of the option to be elected rather than of the election procedure. The option is "to surrender * * and * * * receive." The conclusion seems to me inescapable that the surrender of the policy was intended to be coincident with the receipt of the cash value.

It seems clear to me that a step which is expressly made a part of one of the options, and of one only, cannot be any part of the election process which is common to all of them. The policy provides that the insured may upon written request elect (I) to have the policy continued as paid-up insurance of a reduced amount; (II) to have the policy continued as paid-up term insurance for the face amount, or (III) to surrender the policy and receive the cash value thereof. The majority of the court it seems to me construe the policy to provide that the insured may, upon written request and surrender of the policy, elect (I) to have

it continued as paid-up insurance, (II) to have it continued as term insurance, or (III) to receive the cash value thereof. To do this, however, is to substitute for the contract which the parties wrote another upon which their minds never met. This I am unwilling to do. I, therefore, conclude that the making of a written request by the insured for the cash surrender value, constituted, without surrender of the policy, an election which brought immediately into force a binding contract between the parties for the payment of the cash surrender value.

The conclusion to which I have come is supported by the opinions of two courts in which the precise question was presented for decision. Northwestern Mut. Life Ins. Co. v. Joseph, supra; Fowler v. State Life Ins. Co., La.App., 160 So. 139.

In the Joseph Case the nonforfeiture provisions were substantially the same as those here involved; one of the options being "to surrender this policy and receive therefor in cash its entire share of tontine —that is, the accumulated reserve, together with surplus apportion." The insured wrote for the cash value and signed a receipt but he did not send in the policy. On the day the letter was received at the home office of the company but before its actual receipt he died. His beneficiary sued for the face amount of the policy, less an outstanding loan, contending that the election was not completed until the policy was surrendered. The court, however, held that the mailing of the letter accepting the option completed the election. Judge Carroll said: "Counsel for appellee concede the general rule announced in the authorities mentioned that the unqualified acceptance of an offer by placing it in the mails completes the contract, but attempt to take the case at bar out of this general rule upon the ground that here it was required that the papers and policy must have been actually received by the company before the contract of election was completed; but we cannot find anything in the record that justifies this conclusion. * * * The election on his part had been fully performed before his death, and nothing remained to be done to complete it on his part; nor did the insurance company have any power or right to do other than accept it as made."

In the Fowler Case the nonforfeiture provision was this:

"After two full annual premiums have been paid on this Policy and within thirty-one days after any subsequent premium shall have become due, the owner of this Policy, by written request to the Home Office of the Company, may elect any one of the following options: * * *

"(3) Cash or Loan Value—To receive the cash value upon legal surrender of the Policy to the Company."

The premium was due October 12, 1933. On October 14th the insured wrote the defendant stating that he would not be able to pay the premium and requesting it to "send me the balance of what I have coming." Again on October 30th he wrote to the defendant requesting it to "send me what I have coming." On November 8th the defendant forwarded to him the necessary papers and receipts with instructions to execute and return them with the policy. The insured died November 14th without having returned the papers or the policy. In this case also the beneficiary sued for the face amount of the policy, contending the election had not been completed. The court said:

"It will be noted that in the first paragraph of the nonforfeiture conditions, an election is accomplished 'by written request to the Home Office of the Company.' The assured not only made such written election, but wrote a second time rejecting the offered alternatives and reasserting his demand for the cash surrender value. The rights of the parties were thereby fixed even though, before the making of settlement, the company required the submission of formal proofs and both it and the law required the surrender of the policy. Act No. 57 of 1932.

"Without further discussion, we adopt the expression of our Supreme Court in the similar case of Tucker v. Equitable Life Assurance Society, 174 La. 598, 141 So. 71, 72, viz.:

" 'We have announced the conclusion that the insured, in his letter of December 10, 1928, to defendant's New Orleans cashier, unequivocally elected to have his policy canceled upon the payment of its total surrender value, less the insured's indebtedness to the defendant.

" 'Under his contract of insurance he had the irrevocable right to demand the cash surrender value of his policy at any time, and the moment he mailed his election

to exercise that right his election became a binding contract between the insured and the insurer.'"

I think that the Joseph and Fowler Cases are indistinguishable from the present one and fully support my view that the making of a written request by the insured constituted without more an election which fixed the rights of the parties. I would, therefore, reverse the judgment of the court below and remand the case for a trial on the merits.

My view of the case makes it unnecessary to consider the alternative defense which the court below also held insufficient. As to this I need only say that I agree with the conclusion reached by the majority that the nonforfeiture provisions contained in the policy in suit are substantially the same as those passed on in Jeske v. Metropolitan Life Ins. Co., 113 Pa.Super. 118, 172 A. 172, and that the rule announced in that case was properly applied by the court below, assuming that there was no completed election by the insured of the cash surrender option.