THEODORE J. GRAM et al., as Executors of JOHN A. MESSER, Deceased, Plaintiffs, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant.

Supreme Court, Special Term, Cattaraugus County, August 19, 1947.

*C. J. McCarthy* for plaintiffs.

*Roy P. Ohlin* for defendant.

VAUGHAN, J. The action is brought to recover the face value of two life insurance policies issued by the defendant upon the life of John A. Messer, together with certain disability benefits under one of the policies.

The defendant admits issuance of the policies but denies that either was in force on the date of Messer's death, it being the claim of the defendant that prior to his death, the insured Messer had elected to surrender said policies for their net cash value.

Following joinder of issue, plaintiffs moved for an order striking out defendant's answer and for summary judgment against the defendant for the relief prayed for in the complaint. By counter motion the defendant moves for summary judgment in its favor dismissing plaintiffs' complaint on the merits. Both motions came on for argument on the same day.

It appears from the facts which are not in dispute that the defendant on March 5, 1930, issued two policies of life insurance each in the sum of $25,000 on the life of John A. Messer. The policies are identical except that one has an additional provision providing for disability payments of $250 per month during total disability of the insured. The premiums on each policy were paid from date of issuance to and including the policy year beginning March 5, 1945.

On February 15, 1946, the insured wrote the defendant as follows:

" MESSER OIL CORPORATION
Producers of Petroleum
Olean, N. Y.

February 15, 1946

Mutual Life Insurance Company of New York
34 Nassau Street
New York, N. Y.

Policies No. 4,303,328, 4,303,329

Gentlemen:

Effective on the anniversary date, March 5, 1946, it will be my desire to surrender above-numbered policies for their then total

cash value, $14,469.00, allowing this amount to remain on deposit with the company at the rate of interest prescribed in the policy, interest payable monthly, with the provision that the whole or any part of the principal may be withdrawn on any interest date and with the further provision that, in event of my decease, any balance on deposit shall be payable to my executors, administrators or assigns.

Please send me appropriate forms for accomplishing the foregoing.

Yours very truly,
(Signed)   JOHN A. MESSER
John A. Messer.''

Acknowledgment of this letter enclosing forms requested in insured's letter of February 15th went forward to the insured under date of March 1, 1946.   The letter is as follows:

'' March 1, 1946
Policies 4303328, 4303329.

Dear Mr. Messer:

As requested in your letter of February 15, 1946, we are enclosing a form, requesting that the cash value of your policies be left with the Company under Option 1, our interest option. The form also provides that you will have the right to withdraw the principal sum in whole or in part.   The minimum withdrawals that can be made under Option 1 are $250.

If satisfactory the form should be signed by you and your signature witnessed.   It should be forwarded to the Company not later than March 5, 1946, if the surrender is to be effective as of that date.   The policies can be sent in at the same time if convenient.

The cash surrender value of your policies are as follows:

| Policy | Date | Cash Value | Cash Dividend | Premiums paid to: |
|---|---|---|---|---|
| 4303328 | March 5, 1946 | $7248.25 | $ 13.75 | March 5, 1946 |
| 4303329 | March 5, 1946 | 7387.50 | 153.00 | March 5, 1946 |

The cash value quoted above includes the amount of cash dividend shown.

When we receive the signed request form we will issue a supplementary contract providing for the settlement elected.   The contract will be forwarded to Manager W. Merle Smith at 1750 Liberty Bank Building, Main & Court Streets, Buffalo 2, N. Y.,

to be delivered in exchange for the policies, if the policies have not previously been sent to the Home Office.

It is a pleasure to be of service to you.

Sincerely yours,
A. M. MOTHERAL
*Assistant Actuary*
By J. D. MALONE
*Section Head*

Mr. John A. Messer
Messer Oil Corporation
Olean, New York
EFB:GLH ''

Under date of March 4, 1946, the insured executed the form enclosed in defendant's letter of March 1st. The pertinent language contained in the form is:

'' I, John A. Messer, as payee under Contract (s) 4303328, 4303329 which are surrendered as of March 5, 1946, elect that all of the surrender proceeds be settled by a supplementary contract * * *.

'' Please provide that I may make withdrawals under Option 1 or 4 or surrender under Option 2. THERE WILL BE NO SUCH RIGHT TO WITHDRAW OR SURRENDER UNDER OPTION 3.'' The option selected was Option 1 and requested payment of income to be made monthly.

The last paragraph of the form immediately above insured's signature reads: '' VI. I authorize the company to conform the supplementary contract prepared on the basis of this request to company rules and practices not more restrictive than the policy, and retention by me of the supplementary contract so prepared shall be deemed acceptance of such contract and approval of the company's construction of this request.''

Following receipt of executed form just referred to and on March 19, 1946, the defendant issued its supplementary contract No. SN–51256 in the sum of $14,635.75, representing the net cash value of the policies in question.

Before delivery of the supplementary contract by the local agent of the defendant company to the insured and on March 28, 1946, within the grace period the insured wired the defendant as follows: '' Re policies 4,303,328 and 4,303,329 ignore my letter February 15 offering to surrender policies for cash values Stop Desire to retain policies and continue premium payments Stop Check in mail for premiums due March 4, 1946 to W. Merle Smith Buffalo.''

On April 1, 1946, the defendant's agent at Olean, tendered the supplementary contract to the insured and at the same time offered the return of the check for $1,643.25 forwarded by Messer to the defendant's agent, W. Merle Smith, under date of

March 28, 1946. Tender of the supplementary contract was refused and return of the check was not accepted. Following such refusal and under date of April 18, 1946, the defendant wrote the insured regarding the policies, stating among other things: " Since you have been unwilling to accept the supplementary contract issued in settlement of the cash value of these policies and since you have also refused to accept our return of your check which was tendered in payment of the March 5, 1946 premiums it would serve no useful purposes for us to retransmit both of these items to you. We will, therefore, hold them subject to your order."

It is claimed by plaintiffs that the insured was or became totally disabled on April 1, 1946, and continued to be totally disabled from that time down to the date of his death on January 21, 1947. Following his death the present action was commenced.

The question posed for determination is: Were the policies which are the subject of this action in force after March 5, 1946?

The policies provide (§ 8), that at any time after at least three full years' premiums have been duly paid but not later than three months after default in payment of premiums, the policies may be surrendered for their net cash value, as defined in the policies, less any indebtedness to the company.

The policies also provide (§ 2) that the proceeds of the policies upon maturity as death claims or upon surrender as the case may be, may, if so elected, be settled by one of four optional modes of settlement instead of being paid in one sum.

The insured elected Option 1 as " Mode of Settlement " desired. It provides: " Option 1.— By the Company's holding the proceeds as a principal sum payable at the death of the payee, the Company meanwhile paying monthly interest (with final interest payment to date of such death) at three per cent a year plus participation in excess interest at such rate as the Company may determine for each year."

After setting forth the several other options, the section further provides: " If any of the above options has been elected, a supplementary contract bearing the date on which the proceeds of the policy become payable and providing for the settlement elected will be issued."

It is well settled that when an insured is given the right or option under a life insurance policy to surrender the policy and accept its cash surrender value that such right or option constitutes a continuing offer on the part of the insurance company which, when accepted by the insured through the

exercise of such right or option fixes the rights of the parties without further action on the part of the company (*Pequot Mfg. Corp.* v. *Equitable Life Assur. Soc.,* 253 N. Y. 116; *Lipman* v. *Equitable Life Assur. Soc.,* 58 F. 2d 15; *Pacific States Life Ins. Co.* v. *Bryce,* 67 F. 2d 710; *Tucker* v. *Equitable Life Assur. Soc.,* 174 La. 598; see, also, *Lofaro* v. *John Hancock Mut. Life Ins. Co.,* 239 App. Div. 54, affd. 272 N. Y. 627; *Gately-Haire Co.* v. *Niagara Fire Ins. Co.,* 221 N. Y. 162; *Crown Point Iron Co.* v. *Ætna Ins. Co.,* 127 N. Y. 608).

Having in mind the insured's absolute right to surrender his policies for their net cash surrender value and either take the proceeds in cash in one sum or elect that the proceeds be paid in accordance with one of the several options selected by him, we proceed to consider the contentions of the parties.

The position of the plaintiffs is that there was no effective surrender of the policies and election to accept their cash surrender value as provided for in Option 1 of the policies and that his attempted withdrawal of his election within the grace period was effective.

The position of the defendant is that the insured, by his letter of February 15, 1946, followed by the execution of the " Income Settlement Request " constituted a surrender of the policies and an irrevocable election to accept settlement of the policies as provided by Option 1 of the policies and that the election so made estops the insured from thereafter withdrawing.

The argument advanced by the plaintiffs proceeds upon the theory that the defendant was required to take affirmative action by the issuance and delivery of a supplementary contract satisfactory to the insured before the insured could be estopped from withdrawing his election to surrender his policies for their net cash value and make settlement in accordance with Option 1 of the policies. The further argument is also advanced that there was never a surrender of the policies. I have reached a contrary conclusion.

The right afforded to the insured by the terms of the policies to surrender the policies for their net cash value and to elect one of several options set forth in the policies constitutes a continuing offer by the defendant to the insured. It is self-operating as far as the defendant is concerned. Once the insured elects to surrender the policies and accept their cash surrender value and selects one of the several options afforded covering disposition of the proceeds representing the cash surrender value of the surrendered policies, that part of the contract is closed and the insured may not thereafter revoke

his choice. The acceptance of defendant's continuing offer attests a meeting of the minds of the parties and constitutes a binding contract (see cases above cited).

It is true that the insured's letter of February 15th calls for the right to make withdrawals of principal, a right not conferred by the options contained in the policies, and that the request form forwarded by the defendant contained a request that the right of withdrawals be given the insured. However, the defendant's letter accompanying the request form explained that the right of withdrawal would be accorded provided the minimum withdrawals should be $250, and the execution and return by the insured of the request form was an election to accept the defendant's proposal contained in the policies as the same was modified by the correspondence. The minds of the parties had met.

The supplementary contract to follow such election was simply evidence of a closed transaction. It sets forth the amount of the fund created by the insured's surrender of the policies and election to take their cash value and the method of the distribution of the principal and interest of said fund. It in no way affects the legal rights and obligations of the parties. Those rights and obligations were definitely fixed by the provisions of the policies.

Plaintiffs place much stress upon section VI of the '' Income Settlement Request '' and argue that from its language it is clear that the insured was free to withdraw from any election made until he had accepted the supplementary contract by its retention. I put no such construction on the language of this section. In my opinion it in no way affects or limits the insured's right to surrender the policies and take their net cash value. It simply affords the insured a right to examine the supplemental contract — and for that purpose retain it, if need be, for a reasonable time — to ascertain if the defendant had provided for distribution of the proceeds of the policies in line with the '' Income Settlement Request '' executed by insured. Surely he had a right to insist upon distribution of the cash value fund left with the defendant in accordance with company rules and practices not more restrictive than the policies, and to that end he had the right to examine the supplementary contract setting forth the distribution of the fund to ascertain if it followed or was more restrictive than the provisions of the policies. Such right of examination carried with it the undoubted right to return the supplementary contract to be corrected to conform to the insured's request as set forth

in the " Income Settlement Request " in the event it did not so conform. Such right, however, would not, in the court's opinion, permit withdrawal of the insured's prior election to surrender the policies for their cash surrender value because of error of the defendant's construction of insured's request as set forth in the " Income Settlement Request ".

The supplementary contract at best is nothing more or less than a certificate of the rights and benefits afforded under the option selected by the insured.

Failure of the insured to make physical delivery of the policies does not destroy the effectiveness or validity of the insured's election to surrender the policies and accept their cash surrender value.

In the " Income Settlement Request " signed by the insured he indicated constructive, if not actual, surrender of the policies. The language used is: " I, John A. Messer, as payee under Contract(s) 4303328, 4303329 *which are surrendered* as of March 5, 1946, elect etc." (Emphasis mine.)

The argument that the insured could not force payment until he surrendered the policies is beside the point. Such argument overlooks the fact that physical delivery of the policies affects the date of settlement or payment only and is not a condition precedent to an effective election to surrender (*Fidelity Mut. Life Ins. Co.* v. *Merchants' & Mechanics' Bank*, 71 F. 2d 777, certiorari denied 293 U. S. 593; *Roth* v. *Kaptowsky*, 393 Ill. 484; *Fowler* v. *State Life Ins. Co.*, 160 So. 139 [La.]; *Northwestern Mut. Life Ins. Co.* v. *Joseph*, 31 Ky. L. Rep. 714; *State Life Ins. Co.* v. *Finney*, 216 Ala. 562.)

No good reason appears why the election to surrender should not be binding even though the amount payable thereunder should be held not to be payable until physical surrender of the policies. In arriving at this conclusion I have not overlooked the case of *Equitable Life Ins. Co. of Iowa* v. *Germantown Trust Co.* (94 F. 2d 898). I feel that the decision therein arrived at is not in accordance with the well-settled law that the surrender of the policy or policies is a requirement of settlement or payment under the option selected and is not a condition precedent to termination of the insurance and creation of an obligation to pay the cash value in accordance with the selected option.

The defendant's letter of March 1st recognizes the execution and return of the request form as an effective surrender of the policies even though not accompanied by a physical transmission thereof.

Even though the policies be construed to require their surrender as a condition precedent to an effective election to surrender, such requirement would be solely for the benefit of the insurer and could be waived by it.

It is clear from defendant's letter of March 1st forwarding "Income Settlement Request" blank to the insured that the defendant insisted upon surrender of the policies only as a condition of delivery of the supplementary contract and not as a condition precedent to the termination of the contracts of insurance.

The letter reads in part:

"If satisfactory the form should be signed by you and your signature witnessed. It should be forwarded to the Company not later than March 5, 1946 if the surrender is to be effective as of that date. *The policies can be sent in at the same time if convenient.* * * *

"When we receive the signed request form we will issue a supplementary contract providing for the settlement elected. The contract will be forwarded to Manager W. Merle Smith at 1750 Liberty Bank Building, Main & Court Streets, Buffalo 2, N. Y. *to be delivered in exchange for the policies, if the policies have not previously been sent to the Home Office.*" (Emphasis mine.)

Holding as I do that the insured made a valid and irrevocable election to surrender the policies and accept their cash surrender value, it follows that the policies were not in force subsequent to March 5, 1946, and that the defendant is not liable for death or disability benefits thereunder.

Judgment may be entered dismissing plaintiffs' complaint, with costs.