had been suspended from a balcony above her head. The frame had apparently been dislodged by a co-employé, who was at the time engaged in repairing a cash trolley, which had gotten out of order. The only negligence charged against defendants is that they had retained in their employ an incompetent servant, knowing him to be incompetent, and that it was in consequence of his incompetence that the accident occurred.

The respondent concedes the general rule in this state to be, as declared in Park v. N. Y. Central & H. R. R. Co., 155 N. Y. 215, 49 N. E. 674, 63 Am. St. Rep. 663, and many other cases, that in an action like the present the plaintiff, in order to succeed, must show incompetency by specific acts of the servant, and that the master knew, or ought to have known, of such incompetency. The respondent does not attempt to bring herself within the rule, and gave no evidence of any specific act of incompetency on the part of her co-employé. She attempted to supply this lack of proof by saying that, about a year after the accident, one of the defendants said in a conversation with her: "You see this Mr. Ellis (the co-employé) is a careless man, and is always doing things like that." In this she was corroborated by her sister. This conversation is denied by the defendant, and seems to me to be wholly improbable. Ellis had been continuously in defendants' employ for some 17 years, and it is not at all likely that he would have been retained for that length of time if he had been uniformly careless and incompetent. No other similar accident is charged against him, and both he and his employer say that none other had happened. Furthermore, the statement, even if made, that he was careless, falls short of showing that he was incompetent.

Finally the evidence failed to show negligence on the part of the co-employé Ellis. The wire that required fixing ran along parallel to to the balcony and a few feet from it. Ellis climbed over the railing of the balcony and put one foot on a little iron pipe running out to the upright that carried the cash carrier. In reaching for the wire he lost his balance and swung in to the balcony; his left foot apparently dislodging the advertisement. This was the method he usually employed to reach the wire when anything required to be done near the balcony, and it is not shown to have been a negligent or improper method. He used a step-ladder sometimes to reach the wire; but this was only when the wire to be reached was in the center of the store, where there is no balcony. The complaint should have been dismissed.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur.

---

### TIMBEL v. GARFIELD NAT. BANK.

(Supreme Court, Appellate Division, First Department. November 8, 1907.)

1. BANKS AND BANKING—CHECKS—SIGNATURES—PRESUMPTIONS.

A banker is presumed to know the signature of his depositor, and if he pays a forged check he cannot charge the amount to his account.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, §§ 438–452.]

**2. SAME—NATIONAL BANKS—PAYMENT OF RAISED CHECKS—QUESTIONS FOR JURY.**

In an action against a national bank for the alleged payment of a raised check, evidence considered, and *held* sufficient to take to the jury the questions as to whether the plaintiff did not in fact authorize the check for the full amount paid, and as to plaintiff's contributory negligence in issuing the check so as to be capable of being raised without suspicion.

**3. SAME—LIABILITY OF BANK.**

Where the drawer of a check has prepared his check so negligently that it can be easily altered without suspicion, and alterations are afterwards made, the bank cannot be held liable for paying the check so altered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 442.]

Appeal from Trial Term, New York County.

Action by Rachel Timbel against the Garfield National Bank to recover amount paid on raised checks. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before PATTERSON, P. J., and LAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

Thomas D. Adams, for appellant.

Joseph Fettretch, for respondent.

HOUGHTON, J. The plaintiff, introduced by her husband, who was a customer of defendant, on the 23d day of June, 1903, deposited in the defendant's bank the sum of $5,000. On the 17th day of July following the husband presented a check of plaintiff, the body of which was all in his handwriting, payable to his own order, for $4,900, which amount was paid to him thereon. The plaintiff admits that the signature to the check was that of herself, but asserts that the check was drawn for only $900, and that it had been altered, and that the defendant wrongfully paid the full amount, and still owes her $4,000.

The check was an ordinary printed form, and the words "Nine Hundred" were written in the middle of the blank left for that purpose, leaving a space in front of them sufficient to write the word "Forty" without exciting suspicion, and there was also a space between the dollar mark and the figures "900" sufficient to insert the figure "4," all of which plaintiff observed when she signed her name to it. When presented to the defendant the check appeared to have been drawn for $4,900, both from the writing in it and the figures upon it. When plaintiff signed the check it contained no date, and she called her husband's attention to that fact, and he afterwards inserted it. Upon the check being presented for payment by the husband, the defendant took the precaution of comparing the signature of plaintiff with her signature in defendant's book, and it was found to be genuine. Four days after the check had been cashed, the plaintiff's husband disappeared, and the plaintiff went to defendant's banking house and claims then to have learned for the first time that the check called for $4,900, instead of the $900 which she claimed to have drawn it for.

Her position is that the defendant wrongfully paid out the $4,000 upon a check raised by that amount, and hence that it still owes her that sum. The defendant's position is that the plaintiff was so negligent in drawing the check, by leaving spaces which could be filled

in without exciting suspicion, that her own carelessness invited what actually happened, and that she must suffer the consequences by bearing the loss herself.  On the trial the court directed a verdict in plaintiff's favor, denying the request of the defendant to go to the jury upon the question of fact as to plaintiff's negligence, as well as the question whether, upon the whole evidence, plaintiff had not authorized her husband to draw the check for the full sum of $4,900.

We think the court erred, and that the questions should have been submitted to the jury.  A banker is presumed to know the signature of his depositor, and if he pays a forged check he cannot charge the amount to his account.  If a check plainly appears to have been altered, the banker is put on inquiry as to the correctness of the alteration, and he pays it at his own peril.  Where, however, the alteration is such as to excite no suspicion, because the check has been drawn by the maker in such a way as to invite an unsuspicious alteration, the law makes an exception to the rule that a banker pays at his own peril, and permits him to assert negligence on the part of the maker in so drawing his check.

The text-books are quite unanimous in asserting that where a drawer of a check has prepared his check so negligently that it can be easily altered without giving the instrument a suspicious appearance, and alterations are afterwards made, he can blame no one but himself, and in such case he cannot hold the bank liable for the consequences of his own negligence in that respect.  5 Cyc. 544; Daniel on Neg. Inst. (5th Ed.) § 1659; Morse on Banks & Banking (4th Ed.) § 480; Zane on Banks & Banking, § 154; Story on Prom. Notes (7th Ed.) p. 675; Byles on Bills (16th Ed.) p. 25.

The earliest authority in which this principle was applied is Young v. Grote, 4 Bing. 253, where the decision of an arbitrator relieving the banker from liability upon a check drawn almost precisely in the manner of the one at bar was affirmed, on the ground that the banker had been misled by want of proper caution on the part of his customer. This case has been much commented upon, and it is urged that its authority is greatly weakened by such criticisms.  These criticisms are pointed out in Greenfield Savings Bank v. Stowell, 123 Mass. 196, 25 Am. Rep. 67, where it was held that in any event the principle did not apply to a note, because the maker of a promissory note held no such relation to the indorsees as does a depositor to his banker.  On the other hand, the Pennsylvania and Illinois courts apply the principle to negligently drawn notes as well as to checks.  Garrard v. Haddan, 67 Pa. 82, 5 Am. Rep. 412; Leas v. Walls, 101 Pa. 57, 47 Am. Rep. 699; Harvey v. Smith, 55 Ill. 224.

While Young v. Grote has not been expressly approved by our courts, the principle upon which it was decided has been recognized in Crawford v. West Side Bank, 100 N. Y. 50, 2 N. E. 881, 53 Am. Rep. 152, and in Critten v. Chemical National Bank, 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529.  In the former of these cases, Ruger, C. J., says:

"The question of negligence cannot arise unless the depositor has, in drawing his check, left blanks unfilled, or by some affirmative act of negligence has facilitated the commission of a fraud by those in whose hands the check may come."

In the latter case, Cullen, J., says:

"Now, while the drawer of a check may be liable where he draws the instrument in such an incomplete state as to facilitate or invite fraudulent alterations, it is not the law that he is bound to so prepare the check that nobody else can successfully tamper with it."

The facts disclosed by the record peculiarly call for the application of the rule, which we think sound upon principle as well as authority. The plaintiff intrusted the filling in of the check to her husband. The amount which she claims to have assented to, as well as the alterations, were all in his handwriting, and there was nothing to excite suspicion. It was payable to his order, and she saw the form in which it was written, and later explained it to the bank officials. There is an attempted claim on her part that she could neither read nor write, but the facts and her own admission show this was untrue.

The defendant does not claim that, in leaving spaces upon her check which could be filled in by her husband without exciting suspicion, the plaintiff was guilty of negligence as matter of law. What it does claim, and what it contended on the trial, was that it was a question of fact to be determined by the jury, from all the circumstances, whether or not she was negligent, and that, if the jury found she was, then the defendant should be relieved from repaying the amount to her. In this contention we think the defendant was correct.

We are also of the opinion that there were sufficient suspicious circumstances connected with the transaction to make it a question of fact for the jury as to whether or not the plaintiff did not in fact authorize the drawing of the check for the full amount which it called for.

The direction of a verdict in favor of the plaintiff was error, and the judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.