### THOMAS v. STANDARD ACCIDENT INS. CO. OF DETROIT, MICH., et al.

### No. 13188.

District Court, E. D. Michigan, S. D.
June 15, 1934.

Robert S. Marx, of Detroit, Mich., for plaintiff.

Lightner, Hanley, Crawford, Sweeney & Dodd and Stevens T. Mason, all of Detroit, Mich., for defendants.

LINDLEY, District Judge.

Plaintiff, receiver of the First National Bank of Detroit, brings this suit against defendant upon a certain blanket fidelity bond claiming that, because of the dishonest acts of one or more of his employees, plaintiff has lost the amount of a certain check for $2,326.20.

The bond was executed on the 13th day of March A. D. 1933, in favor of Paul C. Keyes as conservator of said bank, and continued in force in favor of Mr. Thomas as conservator, upon his appointment in lieu of Mr. Keyes. On or about the 12th day of April, A. D. 1933, plaintiff, pursuant to an order of the Comptroller of the Currency, prepared to pay to the depositors of the bank for which he was receiver dividends of 40 per cent. A newly formed bank, the National Bank of Detroit, occupying the same premises as plaintiff, agreed to provide the funds to pay the dividends by buying certain assets from plaintiff and using certain moneys loaned to plaintiff by the Reconstruction Finance Corporation. These funds were deposited to the credit of Mr. Thomas in the National Bank of Detroit.

There were over 800,000 dividend checks to be delivered, and plaintiff devised a type of check drawn upon the National Bank of Detroit by plaintiff and executed by one of his authorized agents payable to the depositor. Blank checks so prepared were placed in the files of the individual accounts of the depositors. The customer was required to present his passbook to the plaintiff's teller, who would thereupon procure from the file a work sheet, which the customer would sign. The teller then compared such signature with that on the signature card. If the signatures compared favorably, the teller then procured from the file the blank check executed by the plaintiff. The customer was then required to place his signature on the face of the check in the space designated "specimen signature of payee." It was the teller's duty then to sign his name in the space designated "signature verified by." Thereupon the check was delivered to the customer with his passbook. Armed with such check and passbook, the customer would then present his check to the National Bank of Detroit and procure payment thereof upon signing his name once more.

The customers whose names began with "M" were notified to appear on April 28th. Some time during that day a customer by the name of Samuel McAdams presented his passbook. The blank check which should have been in his file could not be located. He was told to return later and came back on the 4th day of May, when a new check was issued to him and paid. In the meantime, it was discovered that the original check issued for Mr. McAdams and placed in his file, No. 657539, had been previously cashed by a teller in the National Bank of Detroit by a party who signed the name of Samuel McAdams in the space provided for the specimen signature. It was apparent that the name of the teller appearing thereon had not been written by said teller but had been traced from his signature. Some third person had presented the check to the National Bank of Detroit, properly executed by plaintiff bearing a purported signature of Samuel McAdams and an apparently authentic but traced signature of the teller to verify same, and had again placed his signature upon the check when presented to the National Bank of Detroit and received payment.

No one had access to any of the files or records of the bank or of the receiver or to the checks, except employees of the plaintiff covered by said bond. While the identity of the perpetrator of the fraud was never discovered, the evidence shows conclusively that it would have been impossible for anybody to have accomplished what was done unless he had been one of the employees of the receiver with access to the checks.

The provisions of the bond are the usual ones in such instruments. This contract purports to insure plaintiff in an amount not to exceed $500,000 from and against any loss sustained by him caused by any loss through any dishonest or criminal act of any of the employees. The liability is elaborated in certain other provisions.

Defendant contends that no proper proof of loss has been made and that no loss has

accrued to the plaintiff, that the acts aforesaid constitute forgery, and that forgery is not covered by the bond.

■ On May 12, 1933, the agent of plaintiff forwarded to defendant a letter setting forth in detail the facts and circumstances surrounding the loss. Thereafter numerous conferences were had between the parties with reference to the loss and certain other matters covered by bonds in which the parties were interested. The agent of plaintiff had formerly represented the First National Bank in a similar capacity and had frequently made settlements with defendant. He testified that the parties agreed that without further preliminaries a suit at law should be instituted to determine the question of liability. Apparently the parties were dealing in good faith with one another, and the course of action was such that the court finds it to be a fact that defendant intended to and did waive the necessity of a formal proof of claim.

Defendant contends with much earnestness that the check in question was a forgery, that payment by the National Bank of Detroit was therefore unauthorized, and any charge to the account of plaintiff on its books on account of the payment of said check wrongful, and that accordingly no loss has accrued to plaintiff.

The question is not free from doubt, and the decisions from various jurisdictions lending light upon the subject seem to be in considerable discord.

■ Upon careful analysis of the facts, however, I am of the opinion that plaintiff has incurred a loss for which it has no recourse against the National Bank of Detroit.

The check in question was a duly authorized one so far as the signature of the plaintiff is concerned. It was in the custody of the plaintiff's employees. The only thing essential to its payment was the delivery to the proper depositor. Some one or more of the employees of plaintiff fraudulently and as a breach of trust procured the issuance of this check to a third person or to himself, signed the name of the payee in two places, and traced the signature of the supposedly verifying teller. The National Bank of Detroit had no signature card of the payee. It had presented to it a check regularly issued by plaintiff and apparently verified by the teller. In this situation it seems to me that, where two innocent persons must suffer, it must be the one who made possible the loss. The National Bank of Detroit could have done nothing to prevent the perpetration of the fraud; that perpetration came solely out of the fact that the plaintiff had put it within the power of his employees to commit the fraud. I cannot conceive how in this situation the plaintiff would have any right of recovery against the National Bank of Detroit.

■ Plaintiff contends that section 17 of the Negotiable Instruments Act of Michigan (Comp. Laws Mich. 1929, § 9264), as follows: "Where an incomplete instrument has not been delivered it will not, if completed and negotiated, without authority, be a valid contract in the hands of any holder, as against any person whose signature was placed thereon before delivery," invalidates the check in question. But I have been unable to discover in any of the precedents any line of reasoning which would warrant this conclusion. I am of the opinion rather that this section of the act, being merely declaratory of the then existing law, was not intended to do away with previously recognized rules by which delivery by the maker would be necessarily implied either from authority actually conferred by him upon an agent or from conduct which should estop him from claiming that he had not delivered or authorized delivery of the instrument. See Allen Grocery v. Bank of Buchanan County, 192 Mo. App. 476, 182 S. W. 777. It may well be that the agent who was authorized by plaintiff in this case to deliver check in question did not commit the fraud, but the circumstances are such that the conduct of the plaintiff in placing this originally authorized check in the hands of employees, thus making it possible for them to commit a fraud, creates an estoppel against the plaintiff in any right of action against the National Bank of Detroit.

We must not lose sight of the particular facts in this case. True, the two signatures were false signatures, but the transaction is more than one of mere forgery. It is one of a fraudulent scheme upon the part of the employees of the plaintiff to make use of the forged signature and by impersonation, removal of the check from the files, and presentation by the wrong person to secure from the assets of plaintiff certain funds. This was fraud—more than forgery—a breach of trust. It is the fraudulent use of authorized checks involving incidentally the use of false impersonation and fraudulent presentation. See Putnam v. Sullivan, 4 Mass. 45, 3 Am. Dec. 206; Theobald v. United States (C. C. A.) 3 F.(2d) 601; Champion Ice Mfg. & Cold Storage v. American Bonding & Trust

Co., 115 Ky. 863, 75 S. W. 197, 103 Am. St. Rep. 356.

To me it seems clear that such fraudulent conduct upon the part of the employees of the plaintiff is within the provisions of the bonds, and, as a consequence of the fraud, plaintiff, having lost the amount of the check, is entitled to recover the same.

There will accordingly be a judgment for the amount of the check, plus interest from the date same was paid at the legal rate, and costs of suit. Execution may issue.