# FIRST NAT. BANK OF KANSAS CITY v. TRAVELERS INS. CO.

## No. 1811.

District Court, W. D. Missouri, W. D.

Nov. 21, 1944.

Butler Disman and George L. Walker, both of Kansas City, Mo., for plaintiff.

Clay C. Rogers, of Mosman, Rogers, Bell & Conrad, of Kansas City, Mo., for defendant.

REEVES, District Judge.

The defendant has filed its motion to dismiss upon the ground that the plaintiff is not entitled to recover the face amount of the policy of insurance in the sum of $7,500 with interest, damages, and attorneys' fees.

It is the contention of the defendant that upon the face of the petition with attached exhibits the plaintiff could only 'recover the sum of $2,865, and no more. The recovery of that amount is not in dispute and the plaintiff does not sue for it in this action.

The plaintiff seeks judgment upon the basis of a clause in the policy entitled "Non-Forfeitable Privileges," as follows:

"If any premium shall not be paid on or before the date when due * * * the insurance will automatically continue from said due date as term insurance during the term, * * * specified in column 3 of the accompanying table and at the expiration thereof this contract shall be null and void. In lieu of such term insurance, upon written request made by the Insured within three months from said due date the Company will, as the Insured may elect, indorse the contract for the amount of paid-up insurance, if any, specified in column 2 or upon surrender thereof pay the cash value, if any, specified in column 1."

The schedules to which reference is made appeared on the policy and computations in case of default could be easily made. The insured paid twelve full annual premiums on the policy bearing date December 4, 1930. The effective date of the policy, however, was December 3, 1930. The premium due December 3, 1942, was not paid and except that the policyholder elected to take a reduced amount in paid-up insurance within three months from the date of default, then the face amount of the policy was automatically continued as temporary insurance for a period of twelve years and eleven days.

The policyholder died on February 17, 1943, which was within three months from the due date of the last premium. It is admitted, however, in the complaint that the policyholder in the exercise of an option provided in the contract, "on or about December 7th, 1942, * * * requested defendant in writing to consider said insurance policy as paid-up to the amount applicable thereunder." In pursuance of such request in writing the policy was delivered to the defendant, and, on January 18, 1943, endorsed as follows:

"Indorsement for Paid-up Insurance

"Upon the written request and election made by the insured and assignee pursuant to the non-forfeitable privileges therein contained, this contract is hereby made by the company a paid-up insurance for Two Thousand Eight Hundred Sixty-Five —(2865.00) Dollars payable at the death of the insured, such paid-up insurance being in lieu of and in full surrender of any and all other benefits contained in or attached to the contract. Payment so made shall

be a full discharge of the Company's obligations under this contract."

The above indorsement bore date: "Hartford, Connecticut, January 18, 1943," and was regularly signed by proper officers of the defendant.

The plaintiff in its complaint frankly avows these facts, but says:

"(9) That regardless of said request for a continuation of said policy as paid up at a reduced amount said policy by its terms, conditions and provisions remained and was intended to remain in full force and effect, for the full face amount thereof, for a period of three months after default in payment of the premium expressed to be due on December 3rd, 1942, or the death of said insured prior thereto, *and that said endorsement by defendant which purported to reduce the face value of said policy to the amount of Two Thousand Eight Hundred Sixty-five Dollars ($2,865.00) was of no force or effect at the date of the death of said insured, which occurred less than three months subsequent to the date of default in payment of. the premium expressed to be due on December 3rd, 1942;* * * * *."

As indicated, the defendant challenges the sufficiency of the complaint. A photostatic copy of the policy was attached to and made an exhibit to the complaint.

1. No question is raised or could be raised as to the right of plaintiff to sue. The averments of the petition as well as attached exhibits reveal that the plaintiff became by sundry assignments and agreements the beneficiary under the policy and is clearly entitled to collect whatever benefits accrued under the policy and it is the only proper party plaintiff in this action.

2. The plaintiff relies on the case of Clappenback v. New York Life Ins. Co., 136 Wis. 626, 118 N.W. 245. The pertinent provisions of the policy in the Clappenback case were substantially the same as in the policy under consideration. The contract in the Clappenback case simply provided, as here, that in case of default after the payment of a stipulated number of premiums the policyholder could make an election within a period of six months as to which of the several options provided for settlement he would choose. It was immaterial whether for term insurance in the face amount of the policy or for a paid up policy as the reserve was identical for each. The accumulated reserve available

in settlement was treated as a net single premium either to purchase temporary insurance for the face amount of the policy or a paid-up policy for a reduced amount.

The fact that the policyholder had six months within which to elect was a favor to him and not a discrimination against him. If the policyholder was young and in good health his reasonable expectancy would survive the period of temporary insurance. In that event, the paid-up policy would have the greater value. These are chances constantly being taken by insured persons. Two persons, each of the same age and on the same day, purchasing identical amounts of insurance might make different selections. The future events might prove that the selections were unwise in each case. In one case the insured might have taken a limited payment endowment policy (a high priced contract), the other might have taken a term policy for a limited number of years (a low priced contract). Both may have died within a year. In that event the one holding the endowment policy would have paid a high price for his insurance whereas the other obtained his protection at a low cost. When the policyholder in the Clappenback case made the selection, as he had a right to do, it was doubtless his expectation to survive the term period and that then in all events at his death his estate, or beneficiary, would have something for the premiums paid by him.

Reserves are computed on an annual basis, and a period of six months is not regarded as important in computing reserves except in exceptional cases. It appears that sometimes a policy is pre-dated to give the policyholder the benefit of a lower premium, and, as a consequence, a lower reserve. Two persons of approximately the same age conceivably could hold the same kind of policy contracts in the same amount, and yet with varying premiums and varying reserves.

As an illustration: Two persons born, the one on December 19th of a given year, and the other on December 21st of the same year, upon attaining the age of 35 might at the same time and to the same agent make applications for identical insurance and yet the one may have a higher premium and higher reserves. The insurance age of one would change on June 19th and the other on June 21st, respectively. On the 20th of June the insurance age of the one born on the 19th of December would be 36, the insurance age of the one born on December 21st would remain 35. If the policies were currently dated, the one would pay a premium as of the age of 36 and the other a premium as of the age 35, with only two days difference in their ages. These are problems of insurance practice that daily confront insurance underwriters and the insuring public and are inescapable. Such problems are taken into account in insurance underwriting and frequently compromises and adjustments are incorporated in insurance contracts. It should be stated that the insured, at age 36, enjoys a higher reserve and to that extent is compensated for the higher premium paid by him. An examination of the facts in the Clappenback case discloses a right of recovery on the part of the plaintiff for the full amount of the policy on the basis of term insurance. However, such right was expressed in a separate concurring opinion and not in the majority opinion.

█ 3. Moreover, the policy under consideration having been issued in Missouri became a Missouri contract and is to be construed under the laws of the state. Section 5853, R.S.Mo.1939, Mo.R.S.A., confers upon an insured person holding a policy the right, "after the payment of three or more full annual premiums, and not later than sixty days from the beginning of the extended insurance provided in the preceding section," to "demand of the company, and the company shall issue, its paid-up policy." This statute became a part of the policy as effectively as if incorporated therein. However, the policy contract being more liberal than the statute, it was the right of the policyholder to demand a paid-up policy conformable to the contract. If the option in the contract had been less favorable then the policyholder may have resorted to the option provided by the statute. In either event it was the right of the policyholder to demand paid-up insurance at any time within three months after default in payment of his premium. The provision of the policy for a paid-up contract was a continuing offer incorporated therein and it was the right of the policyholder to accept the offer at his option. When accepted, a modified contract became completed. The defendant had no right to refuse the request of the policyholder.

A somewhat similar situation was present in the case of McKinney v. Fidelity Mut. Life Insurance Co., 270 Mo. 305, 193 S.W. 564, 567. In that case the insured

held a policy of the Fidelity National Insurance Company with the face amount of $30,000. The effective date of the policy was November 1, 1903, the policy itself being dated December 29, 1903. All of the premiums were paid from its effective date until November 1, 1912. The paid-up value on December 1 was admittedly $2760. After the premium due date, towit, on November 19, 1912, the policyholder notified the insurer in writing that he wanted a paid-up contract. After correspondence, the company, on December 3, 1912, returned the policy to the policyholder with the following letter:

"We enclose herewith participating paid-up policy of above number for $2760 issued per instruction of our actuarial department, and your letter of the 25th enclosing policy and form No. 375."

The policy was not received by the insured during his lifetime. The insured died on December 5, 1912. The Supreme Court of Missouri said, in respect of contentions similar to those urged here by the plaintiff:

"* * * it is difficult to see what impediment could exist in the way of the transaction which was had between the insured and the defendant company. *They were the parties to the convention, and possessed an absolute right and power to frame their contract as they saw proper, provided its terms and stipulations were not contrary to any rule of law or public policy of this state.*"

That was precisely the situation in this case according to the averments of the complaint. The policyholder in his lifetime requested in writing an endorsement for paid up insurance. The defendant yielded to his request as it was bound to do and duly stamped the contract with the endorsement providing paid-up insurance in an amount below the face amount of the policy. In doing that, the company gave to the insured the exact equivalent of temporary insurance for a limited time. The policy was returned to him and it was nearly 30 days thereafter before his decease. The early demise of the policyholder (not, of course, foreseen) would have made it much preferable if the temporary insurance had been left in force. On the other hand, if the policyholder had survived the period of temporary insurance, then the paid-up policy would have proved the more profitable. Again, this is a chance that an insured person must necessarily take.

If a policyholder knew that his death was imminent, then a low priced policy would be preferable. On the other hand, if the insurer knew that death was imminent it would not grant any kind of insurance. A policyholder who dies shortly after taking out a contract has a better bargain for his insurance than the policyholder who survives to pay premiums over a long period of time. It is because of the uncertainties of life that insurance is provided at all. Insurance contracts must be construed as the parties view them prospectively and not in the after light of subsequent events which would disclose a wiser and different course if the parties could have anticipated such events.

The opinion in the case of First National Bank of Kansas City v. New York Life Insurance Company, D.C., 58 F.Supp. 123, involved an identical question. That opinion should be referred to for its reasoning as applicable and pertinent in the decision of this case.

The motion to dismiss should be sustained, and it will be so ordered.