The opinion in the case of First National Bank of Kansas City v. New York Life Insurance Company, D.C., 58 F.Supp. 123, involved an identical question. That opinion should be referred to for its reasoning as applicable and pertinent in the decision of this case.

The motion to dismiss should be sustained, and it will be so ordered.

---

**FIRST NAT. BANK OF KANSAS CITY v. NEW YORK LIFE INS. CO.**

No. 1810.

District Court, W. D. Missouri, W. D.

Sept. 12, 1944.

Nov. 21, 1944.

Butler Disman and George L. Walker, both of Kansas City, Mo., for plaintiff.

Lathrop, Crane, Reynolds, Sawyer & Mersereau, Richard S. Righter, and Rudolph Heitz, all of Kansas City, Mo., for defendant.

REEVES, District Judge.

Purely legal questions are raised on the motion to dismiss. Heretofore the plaintiff in its trust capacity received the assignment of an insurance policy issued by the defendant to one Harold Oppenheimer. The policy was dated December 12, 1919, and, subject to unimportant changes, continued in effect by reason of the payment of premiums until a premium became due on December 12, 1942. Such premium was not paid. The insured, however, elected to utilize one of the several settlement options under the policy. He expressed his election in writing to the defendant and secured in lieu of the policy for the face amount of $5,000 a paid up policy in the sum of $2,-850. Such settlement was provided for by the policy as follows:

"Section 3—Surrender Values.

"After three full years' premiums have been paid, the Insured may, at the end of any insurance year or within three months after any default in payment of premium but not later, surrender the Policy, and * * *

"(2) Receive the amount of non-participating Paid-up insurance which the cash surrender value at date of default less any indebtedness hereon will purchase, payable at the same time and on the same conditions as this Policy."

It is averred in the complaint that a few days before the anniversary of the policy or premium paying date, namely, December 7, 1942, "insured made a written request of defendant to consider said insurance policy as paid-up to the amount applicable thereunder * * *."

It is further averred that on January 12, 1943 (after default but within the three months prescribed by the policy), the "said insured and plaintiff, as assignee, at the request of and on form furnished by defendant, jointly executed written request that defendant endorse said policy as participating paid-up insurance for the reduced amount of Two Thousand Eight Hundred and Fifty Dollars ($2,850.00); and that thereafter, namely, on January 19th, 1943,

which was less than three months subsequent to default in the payment of the premium expressed to be due on said policy on December 12th, 1942, said policy was delivered to defendant, which endorsed thereon a statement to the effect that the same was being continued in full force and effect, as paid-up insurance, in said reduced amount of Two Thousand Eight Hundred and Fifty Dollars ($2,850.00); * * *."

An inspection of the photostatic copy of the policy discloses the following endorsement:

## "PAID-UP INSURANCE AFTER DEFAULT

"This Policy is hereby endorsed for paid-up insurance of 2850. · Dollars effective from DECEMBER 12, 1942 in accordance with the terms and conditions of this Policy and of any loan agreement or lien note thereon.

"New York   JANUARY 19 1943
NEW YORK LIFE INSURANCE CO.

William F. Rohlffs     George L. Morrison
          Secretary                    President
WRF           J. (Lurie?)          °
1135-40 Pd.-up Ins.      Registrar"

■ No issue is here made as to the validity of the paid-up policy. The plaintiff sues for the larger amount upon the theory that the election was premature. Such is not the case.

■ On the second count, due to alteration or changes in the policy made by agreement of the parties, the plaintiff claims the premium paying date was postponed. Thus, in effect, it denies that the policy was in default or that a premium was due at the time the insured and the insurer made their adjustment. This is an untenable position. Both the insured and the insurer as well as the plaintiff as trustee treated December 12, 1942, as the premium paying date. The new policy was issued upon that theory and each and all acquiesced in the arrangement. All are bound by their mutual interpretation of the policy.

■ Without collating or citing authorities, the new policy was predicated upon the express terms of the old contract. All of the parties are bound by the new arrangement.

Accordingly, the motion to dismiss will be sustained and it will be so ordered.

### On Motion to Dismiss.

The motion now pending before the court is technically a motion to vacate an order of dismissal rather than a motion to dismiss.

On September 12, 1944, a memorandum opinion was filed as a predicate to an order of dismissal and such an order was made. However, counsel had previously asked for the privilege of an oral argument and such privilege had been granted. This was overlooked when a decision was reached, the memorandum filed and an order made. To protect the record, counsel filed a motion to vacate the order of dismissal and the case was orally argued as if an order of dismissal had not previously been made. After the argument briefs were filed and the case is now again before the court for consideration as if it were a matter of first impression and no memorandum opinion or order of dismissal had heretofore been filed. As indicated in the first memorandum, purely legal questions are raised on the motion to dismiss.

■ The arguments and the briefs of the parties support this statement. The facts are not in dispute and it must be determined from the face of the petition with accompanying exhibits whether a cause of action is stated.

Counsel for plaintiff rely on the case of Clappenback v. New York Life Ins. Co., 136 Wis. 626, 118 N.W. 245. This case, with other authorities, will be discussed in the course of this memorandum opinion.

1. The facts as stated in the complaint are that the defendant, being engaged in the insurance business, issued to one Harold Oppenheimer of Kansas City, Missouri, a policy or contract of insurance in the face amount of $5,000. By the agreement of the insurer and the assured the policy became effective as of December 12, 1919, although the policy bore date January 23, 1925. It was inferred from the argument that this policy was a substitute for a policy previously carried and that insured was given the benefit of predating to protect accumulated reserves. The policy was designated as an "Ordinary Life" policy, and the annual premium was $121.-90. It contained a recital on the first page that:

"This contract is made in consideration of the payment in advance of the sum of $121.90, the receipt of which is hereby ac-

knowledged, constituting the first premium and maintaining this Policy to the *Twelfth* day of *December* Nineteen Hundred and *twenty,* and of a like sum on said date and every *Twelve* calendar months thereafter during the life of the Insured."

The last sentence on page one of the policy is as follows:

"This Policy takes effect as of the *12th* day of *December* Nineteen Hundred and *nineteen,* which day is the anniversary of the Policy."

The policyholder paid the premiums for a period of 23 years, or until December 12, 1942. The premium due on the latter date was not paid. The plaintiff was designated by the assured during his life time to act as trustees of the proceeds of the policy in the event of the assured's death. The terms of the trusteeship are unimportant. The original trust settlement was made on December 17, 1926, and modified November 16, 1928. By the terms of this trust agreement the plaintiff became and is the sole owner of whatever benefits are promised by the contract or any modification thereof. The assured deceased on February 17, 1943.

2. The policy contained a provision with respect to "Surrender Values" as follows:

"After three full years' premiums have been paid, the Insured may, at the end of any insurance year or within three months after any default in payment of premium but not later, surrender the Policy, and
* * *

"(2) Receive the amount of non-participating Paid-up insurance which the cash surrender value at date of default less any indebtedness hereon will purchase, payable at the same time and on the same conditions as this Policy."

In accordance with this provision, the assured, on December 7, 1942, made application in writing for the amount of non-participating paid-up insurance which the then cash surrender value would purchase in accordance with the terms of the policy and a schedule incorporated therein. The amount was computed at $2850. The policy was surrendered by the assured in accordance with the application, and, on January 19, 1943 (almost one month before the death of the assured), the defendant stamped and wrote the following endorsement upon the policy:

### "PAID-UP INSURANCE AFTER DEFAULT

"This Policy is hereby endorsed for paid-up insurance of 2850.          Dollars effective from DECEMBER 12 1942 in accordance with the terms and conditions of this Policy and of any loan agreement or lien note thereon.

"New York,   JANUARY 19, 1943.
NEW YORK LIFE INSURANCE CO."

This was duly signed by the president and secretary of the company as well as the registrar and there were other indicia to confirm the new arrangement. About this there is no dispute.

3. It is the contention of the plaintiff that under the terms of the policy the assured had three months to exercise its option and that since the three months had not elapsed the plaintiff, as beneficiary, became entitled to collect the face amount of the policy, and, as indicated, able counsel cite and rely upon the case of Clappenback v. New York Life Insurance Co., supra, as logical authority for such contention.

In addition to the first contention it is asserted in a second count of the complaint that the policy was dated at a time antedating the payment of premiums and its delivery and, in consequence, its effective date was subsequent to the agreed date, and the period of exercising the option extended more than three months after the anniversary date, to wit, December 12, 1942.

All of these contentions will be noted.

4. The case of Clappenback v. New York Life Ins. Co., supra, has been considered by the court. The facts in that case fully justified the conclusion of the court. The question as to whether or not a paid-up policy was substituted for or superseded temporary insurance was rightly ruled in favor of the larger amount in the light of the particular facts of the case. The majority opinion, however, ordered a recovery for the larger amount on unsound reasoning. The terms of the policy in that case were different from those under consideration, nor do the facts comport with the facts here. The policy in the Clappenback case provided:

" 'This policy is automatically nonforfeitable from date of issue, as follows: If any premium is not duly paid, and if

there is no indebtedness to the company, this policy will be indorsed for the amount ·of paid-up insurance specified in the table on the second page hereof, on written request therefor within six months from the date to which premiums were duly paid. If no such request is made, the insurance will automatically continue from said date for $1,000 for the term specified in said table and no longer.' "

The period of temporary insurance at the time of default was six years and four months, that is to say, the accumulated reserve on the policy according to the contract was sufficient when applied as a net single premium to purchase term insurance in the amount of $1,000 for the term mentioned. On the other hand, the same reserve at the then-attained age of the insured would have purchased a paid-up policy in the amount of $164. The premium for $1,000 for six years and four months was the exact equivalent of the premium for a paid-up policy in the sum of $164. The terms of the policy permitted the exercise of an option within six months. Under the contract the term policy became effective unless by the choice of the insured a paid-up policy was taken. As in this case, the wife of the assured, acting as his agent, sought the issuance of a paid-up policy. The company, through its agent, advised her to wait as she was entitled to the protection of the larger amount for six months and that her choice should not be hastily made. In the meantime, however, the company acceded to the written request and stamped or endorsed the policy for paid-up insurance in the sum of $164, but, before its delivery, the assured died. Quite clearly the company was premature in view of the correspondence in issuing the paid-up policy. The majority opinion, however, decided the case upon the theory that the issuance of the paid-up policy was a discrimination. It was the expressed view that, during the six months period, the reserve was being used to carry the temporary insurance and that one policyholder was having an advantage not vouchsafed to another. This is a non sequitur. The reserves were identical and they remained identical during the entire period of election. As well say that there is a discrimination between insureds if two persons took an identical policy and one is five months and twenty-nine days older than the other. The policies might carry the identical premium and identical reserves. Or, it might be that two persons of approximately the same age, one being but two days older than the other, purchasing insurance at the same time, yet one might be given an insurance age one year older than the other. As an illustration: A person born December 19th of a given year would find his insurance age changing on June 19th of the next year, whereas a person born December 21st would experience no change till June 21st of the next year. If both of them took identical policies on December 20th, the first mentioned would be classed one year older than the last mentioned. This certainly would not be a discrimination. Moreover, the amount involved would not invoke the solicitude of the law. "Lex non curat de minimis."

■ 5. The language of the policy under consideration differs from that in the Clappenback case. The clause under which the parties acted here was not designated as a "Nonforfeiture Clause" but was entitled "Surrender Values." Under such provision the assured had three options. It was his right to utilize any one of them and the company could not question his choice. He had a right to receive the surrender value in cash; he could take a paid-up policy, or he could utilize the benefits of the third option as follows:

"If the Policy be not surrendered for cash or for paid-up insurance within three months after default in payment of premium, its cash surrender value at date of default * * * shall automatically purchase Continued Insurance from the date of default for the face of the Policy plus any dividend additions, etc."

No provision was made in the Clappenback case for the surrender of the policy whereas in the case under consideration such provision was made. In this case the policy was actually surrendered, modified in writing, and returned to the policyholder in his lifetime. If the company had refused to grant his request an action could have been maintained against it. It had no option in the matter. It was compelled by its contract to grant the request of the assured.

■ 6. The new arrangement was contemplated in the original contract. It was not a distinct and independent agreement. As said by Judge Lamm, in Burridge v.

New York Life Ins. Co., 211 Mo. 158, loc. cit. 174, 109 S.W. 560, loc. cit. 565:

"The loan and pledge contract in the case at bar is in no fair sense a contract distinct and independent from the policy. To the contrary, such loan and pledge was contemplated by the policy itself. It involved the policy, it may be likened unto an egg laid in the policy and subsequently hatched—i. e., was made in pursuance of its terms. * * *"

See McCall v. International Life Ins. Co., 196 Mo.App. 318, loc. cit. 333, 193 S. W. 860. The provision for the selection of a paid-up policy, by analogy of reasoning, was contemplated in the original contract.

■ 7. The policy under consideration was issued in Missouri and all modifications were made in that state. Its terms must be construed in the light of the laws of Missouri.

In the case of McCormick v. Travelers' Ins. Co., 215 Mo.App. 258, loc. cit. 275, 264 S.W. 916, 917, the Kansas City Court of Appeals considered somewhat similar facts. In the McCormick case a request had been made for the cash surrender value. Before the company remitted the amount the assured died. It was then contended by the petitioner that the old policy continued in effect. On this question the court said (loc. cit. 275 of 215 Mo.App., loc. cit. 922 of 264 S.W.):

"It is urged that the old policy was still in force because the $180 surrender value was not received by McCormick. The surrender deed is merely a release of defendant from liability and a surrender of the policy for its surrender value. *The policy provided for the cancellation in case the insured requested it.* Under these circumstances, *the cancellation was complete upon receipt of the policy with the request for cancellation, even though the surrender value did not reach insured before he left for Excelsior Springs.*"

In that case no question was raised as to the time allowed the assured for exercising his option. The ruling made is precisely in accord with the overwhelming weight of authority.

In the case of Pacific States Life Ins. Co. v. Bryce, 67 F.2d 710, 712, 91 A.L.R. 1446, the Tenth Circuit ruled on a question practically identical with the one here being determined. The late lamented Circuit Judge McDermott was the author of the opinion. Concerning the surrender of the policy, the court said:

"The offer is contained in the policy contract, and is from the company to the insured; the option is in the insured and not the company, and his acceptance completes the contract; the company has no right to accept or reject; its obligation to pay is absolute."

Again, Judge McDermott wrote:

"The cases, as far as we are advised, are at one in holding that the rights of the parties are fixed when an option given by a policy is exercised by the insured."

There is cited by Judge McDermott the well known case of Lipman v. Equitable Life Assur. Society, 4 Cir., 58 F.2d 15, 17. Turning to the latter case, decided by able Judge Parker of the Fourth Circuit, we note the following pertinent language:

"It is to the anniversary date that the premiums have been paid; it is this date which serves as a basis for determining other rights under the policy; and there could be no reason for requiring an insured, who desires to surrender a policy at the expiration of the period for which he has paid premiums, to wait until the expiration of the grace period to claim the cash reserve to which he is entitled. Nor is there any reason in requiring the company to carry the insurance without compensation during the grace period for an insured who desires to surrender the policy and obtain its value."

Again, Judge Parker said, loc. cit. 18 of 58 F.2d:

"The question is one of exercising an option; and, if insured decided to exercise same and to waive any rights under the grace provision, there would appear to be no reason why the election should not be held binding, even though the amount payable thereunder should be held not to be payable until the end of the grace period or ninety days thereafter."

Concerning the modified contract, he further said:

" * * * there can be no question but that the rights of the parties became fixed and insured became entitled to the cash surrender value, and nothing more, when she exercised the option. It was not necessary that defendant do anything. There was a meeting of the minds of the parties when insured accepted the continuing offer of the company evidenced by the option."

8. Concerning the rights of the parties and the new rights created, if any, the Supreme Court of the United States decided in Aetna Life Ins. Co. v. Dunken, 266 U. S. 389, loc. cit. 399, 45 S.Ct. 129, loc. cit. 132, 69 L.Ed. 342:

"The second policy here was issued in pursuance of, and was dependent for its existence and its terms upon, the express provisions of the contract contained in the first one. By those provisions, upon the simple application of the insured, the new policy must issue. Nothing was left to future agreement. The terms of the new policy were fixed when the original policy was made. In effect, it is as though the first policy had provided that upon demand of the insured and payment of the stipulated increase in premiums that policy should, automatically, become a 20-payment life commercial policy. It was issued not as a result of any new negotiation or agreement but in discharge of pre-existing obligations. It merely fulfilled promises then outstanding; and did not arise from new or additional promises."

The District Court of Rhode Island, in Lovett v. Phœnix Mut. Life Ins. Co., 44 Fed.Supp. 888, sustained the modified contract even though the disability occurred on the same day that the company stamped the new terms upon the policy.

9. In this case the policy was stamped after it had been surrendered and it was then returned to the policyholder who had it in his possession for several days before his death.

In the case of Equitable Life Ins. Co. v. Germantown Trust Co., 3 Cir., 94 F.2d 898, the court sustained the contention of the plaintiff that the mere request for cash surrender value was not sufficient. It was the opinion of the court that the policy should have been surrendered as provided by its terms. Even in that case one of the judges strongly dissented upon the ground that the request was the acceptance of a continuing promise made by the company and that the request was the exercise of an option. That case, however, is not persuasive here for the reason that the policy under consideration was surrendered and stamped and returned to the insured and held by him for almost a month before he deceased.

10. It is unnecessary to discuss the second count. The same principles would be applicable. The cases cited by the plaintiff in support of its contention in count two

are those cases where the question of extended insurance arose. In the instant case there is no dispute but that the assured died within three months of December 12, 1942. To be exact, he died on February 17, 1943. It is unimportant, therefore, whether the policy became effective under the premium payments at a later date than that stipulated in the contract. However, under the Missouri authorities, the parties were bound by that stipulation. See Prange v. International Life Ins. Co. of St. Louis, 329 Mo. 651, 46 S.W.2d 523, loc. cit. 526, where the Supreme Court sustained the right of contract between litigants.

The Texas case relied upon by plaintiff has been examined. The case was entitled Pacific Mutual Life Ins. Co. v. Harris, Tex. Civ.App., 68 S.W.2d 1062. In that case the assured died before the end of the year and before there was any default. The court merely held that it could not have been the intention of the parties to convert the policy to another form of insurance before the end of the year. That case was not in point here for the reason that the option in this case was not perfected until after the premium became due, on December 12, 1942.

In view of the foregoing, both on reason and authority, the plaintiff's complaint does not state a cause of action and should be dismissed. It will be so ordered.