The CONCORDIA LUTHERAN EVANGEL-
ICAL CHURCH, a body corporate,
Appellant,

v.

The UNITED STATES CASUALTY CO.,
Inc., a body corporate, The National Bank
of Washington, Inc., a body corporate, and
The Federal Security Agency Employees
Federal Credit Union, Appellees.

No. 1625.

Municipal Court of Appeals for the
District of Columbia.

Argued May 2, 1955.

Decided June 24, 1955.

Earl H. Davis, Washington, D. C., for
appellant.

Frank J. Martell, Washington, D. C., for
appellee United States Casualty Co., Inc.,
Richard W. Galiher and William E. Stew-
art, Jr., Washington, D. C., also entered an
appearance.

Jo V. Morgan, Jr., Washington, D. C., with whom Roger J. Whiteford and Philip S. Peyser, Washington, D. C., were on the brief, for appellee National Bank of Washington, Inc.

Milton Dunn Washington, D. C., for appellee Federal Security Agency Employees Federal Credit Union.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Loitering about the Concordia Lutheran Church one Sunday was a man later identified as Billy Bateman. When the church president asked him what he wanted, he said he was waiting for someone, and the president invited him to wait inside the church. Later, the church sexton saw him using a phone in a private office and had a similar conversation with him. It later developed that the man had made his way to the pastor's study, which though equipped with a lock had been left unlocked. He rifled the pastor's desk, which had also been left unlocked. In the desk was a checkbook containing checks on the Hamilton National Bank.[1] Twelve checks in the book had been signed in the name of the church by its authorized treasurer, with dates, payees' names and amounts left blank. Bateman stole two of the checks. His sense of caution did not match his larcenous spirit, and before he left he accommodatingly let his driver's permit fall to the floor of the study, thus making considerably surer and simpler his later identification. He simplified matters even further: he typed in as payee on one of the checks his own name, Billy Bateman, endorsed it and had it cashed at the bank; as payee on the other check, he typed in "Cash," endorsed his name on the back and had it cashed at the credit union of a government agency where he had once worked. Each

of the checks was for $373.34. Probably we shall never know whether in deciding on that particular amount Bateman was being sardonic or merely whimsical. It was exactly the same amount as the pastor's monthly checks, as shown on the check stubs.

The church sued United States Casualty Company for refusal to pay under a theft policy, and joined the bank as a defendant on the ground that it was negligent in cashing the checks. The bank then brought in the credit union as endorser of one of the checks. The trial resulted in a directed verdict in favor of all defendants, and it is that ruling which is challenged on this appeal.

■ THE LIABILITY OF THE BANK. As to the check which was negotiated by the credit union, it of course came to the paying bank through usual clearing house channels, and no good reason has been suggested as to why the bank should not have honored a check which was regular on its face and regularly negotiated. As to the check cashed by Bateman at the bank, appellant devoted considerable effort toward establishing that the paying teller did not demand sufficient identification of Bateman. We think the ready answer is that it was not lack of identification which was the root of the mischief; it was that the check itself was a stolen one. On the evidence it seems clear that there was nothing about the man or the check that required the bank to conduct an investigation. It later became known that the check, though properly signed, had not been lawfully completed or delivered by the maker as contemplated by Code 1951, § 28–116;[2] Section 15, N.I.L. But at the time of presentment and payment there was nothing to put the bank on notice of that fact. Both prior and subsequent to the passage of the N.I.L. it has been held that a drawer may be estopped as against a drawee bank to

1. Now The National Bank of Washington, Inc.

2. "Where an incomplete instrument has not been delivered it will not, if completed and negotiated without authority, be a valid contract in the hands of any holder as against any person whose signature was placed thereon before delivery."

rely on Section 15 if after partially executing a check, his negligence contributes to its loss. Courts have in such situations invoked the familiar and salutary maxim that when one of two innocent persons must suffer from the fraud of a third person, the loss must fall on him who made it possible or helped set the wrong in motion. Thus it has been held that while a bank must be assured that the drawer's signature is genuine, it is not under a duty to ascertain that it was the drawer who personally filled in or wrote the body of the check. Snodgrass v. Sweetser, 15 Ind. App. 682, 44 N.E. 648. To the same effect, see Timbel v. Garfield Nat. Bank, 121 App. Div. 870, 106 N.Y.S. 497; Trust Co. of America v. Conklin, 65 Misc. 1, 119 N.Y.S. 367; S. S. Allen Grocery Co. v. Bank of Buchanan County, 192 Mo.App. 476, 182 S.W. 777; Thomas v. Standard Accident Ins. Co. of Detroit, D.C.Mich., 7 F.Supp. 205; World Tire Corporation v. Mutual Bank & Trust Co., Mo.App., 174 S.W.2d 230.

In Weiner v. Pennsylvania Co. for Insurances, etc., 160 Pa.Super. 320, 51 A.2d 385, 388, in an identical situation, the court held that a paying bank is not a "holder," but under its contractual relationship with a depositor is bound to pay a check valid on its face, and that "* * * as between two innocent parties, the bank and the depositor, liability should be borne by the one, i. e., the depositor, who made the loss possible." We are satisfied that the trial court was right in directing a verdict in favor of the bank.

As to the credit union. Little need be said on this subject. The credit union was brought into the case by the bank, and plaintiff asserted no claim against it under rule 14 of the trial court (similar to F.R. Civ.P. 14, 28 U.S.C.A.), as it might have done. The bank having been absolved of liability—correctly as we have just ruled—there was no foundation in law or fact on which to predicate a judgment in favor of plaintiff against the credit union.

[redacted] As to the insurance company. Coverage was sold to appellant under a "Church Burglary, Robbery, Theft and Larceny Policy" in which the company agreed, "To indemnify the assured for all loss by burglary, robbery, theft or larceny of property common in houses of worship, including money, securities. * * *" The policy defined "securities" to mean, "* * * all negotiable or non-negotiable instruments, or contracts representing either money or property. * * *" Appellant naturally takes the position that within the meaning of the policy the two checks were negotiable instruments. The insurance company argues that they cannot be called either negotiable or non-negotiable instruments, and that they were merely blank pieces of paper. We think liability is to be tested not by technicalities of negotiable instruments law, but by the rules of the law of insurance. We have already seen that the church has suffered a loss final and complete, since it has no rights against either the bank or the credit union. Was this type of loss within the contemplation of the parties when the policy was written? "In construing this contract of insurance, the general purpose is to give it that construction which is most probable and natural under the circumstances, so as to attain the object which the parties had in contemplation at the time of making the contract."[3]

[redacted] The policy does not refer to incomplete negotiable instruments of this type; nor, on the other hand, does it exclude them. The only exclusions in the definition paragraph are, "manuscripts, records, accounts or money." We think it is entirely reasonable to say that a policy offering protection against theft of "all negotiable or non-negotiable instruments" should cover the theft of signed checks, which though incomplete at the moment of

3. Mike Occhiato Mercantile Co. v. Allemannia Fire Ins. Co., D.C.Colo., 98 F. Supp. 888, 892. For similar language, see: First Nat. Bank of Kansas City v. Travelers Ins. Co., D.C.Mo., 58 F. Supp. 120.

the theft were in fact completed and successfully negotiated by the thief.

 But even if it be considered that the policy is ambiguous, the insurer is still liable, for nothing is better settled than the rule that such ambiguities are to be resolved in favor of the insured.[4] However the matter be approached, we think the only realistic and practical construction is that the checks stolen from the church were "securities" within the meaning of the policy, and that it would be wrong to deny recovery under the policy. Before assenting to such a denial of liability courts " * * * insist upon language which unambiguously conveys such an intent to the mind of an ordinary layman." Buchanan v. Massachusetts Protective Association, Inc., D.C.Cir., 223 F.2d 609, citing Hayes v. Home Life Ins. Co., 83 U.S.App.D.C. 110, 168 F.2d 152. To the mind of an ordinary layman a policy which insured against theft of "all negotiable or non-negotiable instruments" would not convey a warning that the insurer would refuse to pay a claim of this nature.

 The insurance company asks us to deny recovery on the ground that the loss took place not within the church property as required by the policy, but at the bank when the church's account was debited with the amount of the two checks. We think this is but a play on words. We cannot agree that the subject matter of a theft is any less a loss to the owner because it is not converted into money until after the thief has made good his escape. In Peoples Sav. Bank of Grand Haven, Mich., v. American Surety Co., D.C.Mich., 15 F. Supp. 911, the question was whether a policy covered theft of unissued travelers checks held by the bank under a trust agreement. It was argued that the loss was not covered because it was not until later that the checks were forged and cashed, and had to be made good by the bank. Rejecting

this contention the court said, " * * * the loss, so far as plaintiff was concerned, occurred when the robbery took place." We adopt that language as the law of this case.

Judgment affirmed as to National Bank of Washington, Inc. and as to The Federal Security Agency Employees Federal Credit Union.

Judgment reversed as to United States Casualty Co., Inc.

4. Phoenix Mut. Life Ins. Co. of Hartford, Conn. v. Flynn, 83 U.S.App.D.C. 381, 171 F.2d 982; Pennsylvania Indemnity Fire Corp. v. Aldridge, 73 App.D.C. 161, 117 F.2d 774, 133 A.L.R. 914; Heilman v. American Cas. Co. of Reading, Pa., D.C.Mun.App., 81 A.2d 463, affirmed. 90 U.S.App.D.C. 170, 194 F.2d 348.